Mary THOMAS, as surviving daughter
of Herbert Walter Kannady,
deceased, Plaintiff,

v.

FOUR SEASONS NURSING CENTERS,
INC., and Manorcare Health Services,
Inc., Defendants.

No. 01–CV–685–B.

United States District Court,
N.D. Oklahoma.

Feb. 5, 2002.

Theodore Clayton Sherwood, Sherwood & Brooks, Timothy Steven Gilpin, Tulsa, OK, for plaintiff.

Jake Jones, III, Alison A Cave, Driskill & Jones, Oklahoma City, OK, for defendants.

### ORDER

JOYNER, United States Magistrate Judge.

Now before the Court is Plaintiff's motion for protective order. [Doc. No. 9]. While styled as a motion for protective order, Plaintiff's motion is not seeking the type of order contemplated by Fed.R.Civ.P. 26(c). Rather, Defendants wish to conduct *ex parte* interviews of the treating physicians of Plaintiff's deceased father, and Plaintiff seeks an order, pursuant to 12 Okla. Stat. § 2503(D)(3), prohibiting Defendants from conducting these *ex parte* interviews.

The Court held a hearing and heard argument from counsel on January 24, 2002. For the reasons discussed below, the Court hereby **GRANTS** Plaintiff's motion and finds that, pursuant to 12 Okla. Stat. § 2503(D)(3), Defendants may obtain information from the treating physicians of Plaintiff's deceased father only through "statutory discovery."

## I. DISCUSSION

Defendants are the owners and licensed operators of ManorCare Health Services–Tulsa ("ManorCare"), a long term care facility in Tulsa, Oklahoma. Plaintiff's father, Herbert Walter Kannady, was a resident of ManorCare from October 1999 to January 2001, when he died. Plaintiff alleges that prior to his death, and as a result of Defendants' negligence, Mr. Kannady developed Stage IV pressure sores, which became infected. Plaintiffs allege that the infection from his pressure ultimately caused Mr. Kannady's death.

The issue raised by Plaintiff's motion is the degree to which any physician-patient privilege between Mr. Kannady and his treating doctors survives in this action. Because this is a diversity case in which the negligence law of Oklahoma will provide the rule of decision, Oklahoma's privilege law will also be applied to determine the nature and extent of any physician-patient privilege between Mr. Kannady and his treating doctors. *See* Fed.R.Evid. 501.

In Oklahoma, the physician-patient privilege is controlled generally by 12 Okla. Stat. § 2503. Section 2503(C) makes it clear that the physician-patient privilege survives the patient's death and may be claimed by his "personal representative." There are no allegations in the Complaint, and no evidence presented with Plaintiff's motion, which establish that Plaintiff is in fact Mr. Kannady's "personal representative" as that term of art is defined in the Oklahoma Probate Code at 58 Okla. Stat. § 11. Defendants have not, however, objected on the ground that Plaintiff is not the proper holder of Mr. Kannady's physician-patient privilege. The Court will, therefore, assume that Plaintiff is the proper holder of the privilege under § 2503(C).

The parties agree that by placing Mr. Kannady's physical condition at issue, Plaintiff has to some extent waived any physician-patient privilege which Mr. Kannady may have held. The parties differ, however, as to the scope of said waiver. The parties' disagreement is caused by the fact that Oklahoma has two different statutes dealing with waiver of the physician-patient privilege. *See* 12 Okla. Stat. § 2503(D)(3) and 76 Okla. Stat. § 19(B)(1).

Section 2503(D)(3) is located in the Oklahoma Evidence Code, and applies to all "civil proceedings, conducted by or under the supervision of a court, in which evidence is produced." 12 Okla. Stat. § 2103(A). Specifically, § 2503 provides as follows:

> **The privilege under this Code** as to a communication relevant to the physical, mental or emotional condition of the patient in any proceeding in which the patient relies upon that condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense, **is quali-**

**fied to the extent that an adverse party in said proceeding may obtain relevant information regarding said condition by statutory discovery.**

12 Okla. Stat. § 2503(D)(3) (emphasis added).

Section 19(B)(1) is located in Title 76 of the Oklahoma Statutes which collects various statutory provisions dealing with "torts." Section 19(B)(1) applies to "cases involving a claim for personal injury or death against any practitioner of the healing arts or a licensed hospital, arising out of patient care ...." Specifically, § 19(B)(1) provides as follows:

In cases involving a claim for personal injury or death against any **practitioner of the healing arts or a licensed hospital**, arising out of patient care, where any person has placed the physical or mental condition of that person in issue by the commencement of any action, proceeding, or suit for damages, or where any person has placed in issue the physical or mental condition of any other person or deceased person by or through whom the person rightfully claims, **that person shall be deemed to waive any privilege granted by law concerning any communication made to a physician or health care provider** with reference to any physical or mental condition or any knowledge obtained by the physician or health care provider by personal examination of the patient ....

76 Okla. Stat. § 19(B)(1) (emphasis added).

The Oklahoma Supreme Court has held that § 19(B)(1) "applies only to medical malpractice plaintiffs." *Higginbotham v. Jackson*, 869 P.2d 319 (Okla.1994). The Oklahoma Supreme Court has also held that § 19(B)(1) effects a "complete waiver" of the physician-patient privilege when it applies. *See Johnson v. District Court of Oklahoma*, 738 P.2d 151, 153 (Okla.1987). In other words, the statute extends the scope of privilege-free discovery to "any material relevant to any issue in the malpractice action." *Id.*

In the absence of any physician-patient privilege, a party may conduct *ex parte* interviews with any doctor just as one could do with any other fact witness. *Seaberg v. Lockard*, 800 P.2d 230, 231 (Okla.1990). A court may not, however, exercise its judicial authority to "facilitate or impede such informal communications." *Id.* In other words, in the absence of any physician-patient privilege a doctor may of his own volition choose to speak to an attorney. A court cannot, however, compel a doctor to speak *ex parte* with an attorney. This is because *ex parte* interviews are not one of information gathering arrows which the legislature, Oklahoma or federal, has placed in the court's discovery quiver. *Higginbotham*, 869 P.2d at 319; *Johnson*, 738 P.2d at 153.

The parties also generally agree that § 2503(D)(3) provides only a "qualification" of the physician-patient privilege and does not effect a "complete waiver" as does § 19(B)(1). *Johnson*, 738 P.2d at 153. The scope of privilege-free discovery under § 2503(D)(3) is limited "to the issue of the condition raised as an element of the claim or defense." *Id.* Furthermore, when § 2503(D)(3) applies, the party seeking information about the physical, mental or emotional condition of a patient may do so only through statutory discovery. As discussed above, the Oklahoma Supreme Court has made it clear that the Oklahoma Discovery Code does not specify *ex parte* interviews as a means of discovery, and neither do the Federal Rules of Civil Procedure. *Higginbotham*, 869 P.2d at 319; *Johnson*, 738 P.2d at 153; *Seaberg*, 800 P.2d at 231; Fed.R.Civ.P. 26(a)(5). *Ex parte* interviews cannot, therefore, be properly considered "statutory" discovery as that term is used in § 2503(D)(3).

The decisive issue presented by this case is whether § 19(B)(1) applies. If it does, then it causes a complete waiver of any physician-patient privilege which Mr. Kannady might have held. In the absence of any privilege, Defendants may talk *ex parte* with Mr. Kannady's treating doctors just as they could with any other fact witness. If, however, § 19(B)(1) is inapplicable, then § 2503, the general physician-patient privilege statute, applies. If § 2503 is alone applicable, then it causes a qualified waiver of any physician-patient privilege which Mr. Kannady might have held. Pursuant to this qualified waiver,

Defendants may not talk *ex parte* with Mr. Kannady's treating doctors; they must obtain information from these doctors only through statutory discovery devices. The sole issue for the Court, therefore, is whether § 19(B)(1) applies given the allegations in this case.

■ By its terms, § 19(B)(1) applies to personal injury actions brought against "any practitioner of the healing arts," or against any "licensed hospital." Plaintiff argues that Defendants are a long term care facility and not a "practitioner of the healing arts" or a "licensed hospital." Defendants have the burden of production, which requires them to come forward with some evidence establishing that § 19(B)(1) applies and waives Mr. Kannady's physician-patient privilege. *See U.S. v. Chevron Corp.*, No. C94–1885–SBA, 1996 WL 444597, at *4 (N.D.Cal. May 30, 1996) (citing *GTE Directories Service Corp. v. Pacific Bell Directory*, 135 F.R.D. 187, 192 n. 2 (N.D.Cal.1991)). It is, therefore, Defendants' burden to come forward with evidence that they are either practitioners of the healing arts or a licensed hospital as those terms are used in § 19(B)(1). As discussed below, the Court finds that Defendants have failed to carry this burden of production.

■ Article 7 of Oklahoma's Public Health Code, which is found in Title 63 of the Oklahoma Statutes, defines and regulates hospitals and related institutions. Article 19 of the Public Health Code defines and regulates nursing facilities. There is no indication from a review of these provisions of the Public Health Code that the Oklahoma Legislature intended for nursing facilities to be bound by all of the provisions that apply to hospitals or that hospitals are to be bound by all of the provisions that apply to nursing facilities. The Court finds, therefore, that the Oklahoma Legislature views hospitals and nursing facilities as distinct entities even though they may each perform functions which the other performs.

Documents from the Oklahoma State Department of Health, which were attached by Plaintiff to her reply brief, establish that Defendants' facility was licensed as a long-term care facility. Doc. No. 14. The Oklahoma Legislature's clear differentiation between hospitals and nursing homes is maintained and demonstrated in the very definition of "long-term care facility." The Oklahoma Legislature defines "long-term care facility" as follows:

> "Long-term care facility" means:
>
> a. a nursing facility or a specialized facility, as such terms are defined by Section 1–1902 of this title, [or]
>
> b. skilled nursing care provided in a distinct part of a hospital as such term is defined by Section 1–701 of this title,
>
> . . . .

63 Okla. Stat. § 1–851.1(4). Defendants have presented no evidence that they are providing "skilled nursing care" in "a distinct part of a hospital" as defined in § 1–701. Rather, Defendants were providing long-term care at a nursing facility as defined in § 1–1902.

The Oklahoma Legislature has defined "hospital" as follows:

> [A]ny institution, place, building or agency, public or private, whether organized for profit or not, devoted primarily to the maintenance and operation of facilities for the diagnosis, treatment or care of patients admitted for overnight stay or longer in order to obtain medical care, surgical care, obstetrical care, or nursing care for illness, disease, injury, infirmity, or deformity. . . .

63 Okla. Stat. § 1–701(1) (emphasis added). The Oklahoma Legislature has defined "nursing facility" as follows:

> [A] home, an establishment or an institution, a distinct part of which is **primarily** engaged in providing:
>
> a. skilled nursing care and related services for residents who require medical or nursing care,
>
> b. rehabilitation services for the rehabilitation of injured, disabled, or sick persons, or
>
> c. on a regular basis, health-related care and services to individuals who because of their mental or physical condition require care and services beyond the level of care provided by a residential care home and which can be made

available to them only through a nursing facility.

63 Okla. Stat. § 1–1902(10) (emphasis added). Defendants have not established that their facility is operated "primarily" for the diagnosis, treatment or care of patients. Rather, Defendants operate a facility primarily to provide "skilled nursing care" to residents who need such care. Defendants have, therefore, failed to demonstrate that their facility in any way qualifies as a licensed hospital as that term is used in Oklahoma's Public Health Code.

■ The Court also finds that Defendants do not qualify as practitioners of the healing arts as that phrase is used in § 19(B)(1). Initially, it must be pointed out that obtaining a license under Oklahoma's Nursing Home Care Act to operate a nursing facility in no way authorizes "any person to engage in any manner in the practice of the healing arts or the practice of medicine . . . ." 63 Okla. Stat. § 1–1903(D). One must, therefore, become licensed to practice the healing arts under some other provision of Oklahoma Law. Those provisions are found in Title 59 of the Oklahoma Statutes, which deals with professions and occupations in Oklahoma.

Chapter 11 of Title 59 of the Oklahoma Statutes regulates the practice of medicine and the healing arts by various types of doctors, and Chapter 12 regulates the "practice of nursing," as defined in § 567.3a(2). As with hospitals and nursing facilities, the Oklahoma Legislature has clearly delineated between the practice of the healing arts and the practice of nursing. Defendants have presented no evidence that it was engaged in anything other than the practice of nursing as defined in § 567.3a(2).

At oral argument, Defendants alluded to the fact that they often have doctors on their staff; that these doctors are their agents; and that because these agents are practitioners of the healing arts, Defendants are practitioners of the healing arts. Initially, the Court must point out that there is no evidence in the record which supports any agency relationship between Defendants and any licensed practitioner of the healing arts. In any event, the Court finds that Defendants' argument is negated by 59 Okla. Stat.

§ 492(B), which states that a corporation which hires a practitioner of the healing arts does not, by that fact alone, itself become a practitioner of the healing arts. While § 492(B) is admittedly aimed at preventing corporations from being found to be illegally practicing medicine, § 492(B) does reflect the understanding of the Oklahoma Legislature; that the mere hiring of an agent/employee does not automatically transform the hiring entity into a practitioner of the healing arts. Defendants have, therefore, failed to demonstrate that they qualify as practitioners of the healing arts as that term is used by the Oklahoma Legislature.

## CONCLUSION

The Court finds that 76 Okla. Stat. § 19(B)(1) does not apply in this case because Defendants' have failed to establish that they are practitioners of the healing arts or that they operate a licensed hospital. The physician-patient privilege issues in this case are, therefore, controlled solely by 12 Okla. Stat. § 2503. As discussed above, § 2503 limits Defendants in this case to statutory discovery, which does not include the conduct of *ex parte* interviews. Plaintiff's motion for protective order is, therefore, **GRANTED**. [Doc. NO. 9]. Defendants may not conduct *ex parte* interviews of the treating physicians of Plaintiff's deceased father.

IT IS SO ORDERED.