**HEWLETT–PACKARD CO., Plaintiff,**

v.

**BAUSCH & LOMB INC., et al., Defendants.**

**Nos. C 84 20642 RPA, C 86 20406 RPA.**

United States District Court, N.D. California.

April 9, 1987.

Jonathan A. Marshall, Pennie & Edmonds, New York City, for plaintiff.

Laurence H. Pretty, Pretty, Schroeder, Brueggemann & Clark, Los Angeles, Cal., for defendants.

WAYNE D. BRAZIL, United States Magistrate.

The issue in this discovery dispute is whether defendant Bausch & Lomb waived its rights under the attorney-client privilege and/or the work product doctrine when it voluntarily disclosed its attorney's opinion letter to a non-party with whom it was attempting to negotiate the sale of a business. The letter concerned the validity and possible infringement of plaintiff Hewlett-Packard's LaBarre patent. This patent is in issue in the present litigation.

Defendant disclosed the letter to non-party GEC at a time when defendant and GEC were involved in discussions concerning the sale of defendant's Houston Instruments Division. This division manufactured the plotter that prompted defendant's concern over the LaBarre patent. Plaintiff now asserts that defendant's disclosure of the letter to a third party constituted a waiver of the attorney-client privilege. Defendant asserts that it reasonably anticipated litigation with plaintiff over the LaBarre patent and that, therefore, it had a legal duty to so advise prospective purchasers of Houston Instruments.

The court agrees that defendant had a duty to disclose to GEC at least the fact that there was a real possibility that if GEC purchased Houston Instruments plaintiff would sue them over the right to manufacture the plotter. Presumably to improve the odds of persuading GEC to make the purchase defendant chose to go

further and share the opinion letter with GEC. In so doing defendant took substantial steps to assure that GEC maintained the confidentiality of the letter. Only two copies were transmitted to GEC; GEC was instructed that no further copies were to be made; both copies were returned to defendant's counsel; and the letter was not disclosed to others.

At this juncture the court is persuaded that defendant's disclosure of the opinion letter regarding the LaBarre patent should not constitute a waiver of the attorney-client privilege. This is a close question, on both sides of which there are substantial competing interests. For the reasons set forth below, however, the court concludes that the interests that would be harmed by finding waiver in these circumstances outweigh the interests that would be advanced by such a finding.

Plaintiff rightfully argues that compelling disclosure of the opinion letter might contribute to the truth finding goal of civil adjudication. Access to this document would give plaintiff an opportunity to determine whether there are any inconsistencies between opinions expressed in the subject letter and positions defendants are taking in this lawsuit. While the court cannot know whether any such inconsistencies exist, or how significant they might be, there are reasons to suspect that disclosure of the opinion letter would not contribute significantly to plaintiff's litigation arsenal.

Defendant shared the letter in question with a company that was interested in buying a division of defendant. Presumably one reason for sharing the letter was to help persuade the prospective buyer, GEC, that the odds were good that plaintiff would be defeated if it sued over the patent. Thus, it is unlikely that the letter in question reflects an overall negativity about the validity of the patent that is inconsistent with the underlying position defendant is taking in this case. Despite this probability, for purposes of this opinion the court is prepared to assume that plaintiff's interest in access to this document is not insubstantial.

It must be noted, however, that in every case opposing counsel would have these kinds of interests in access to virtually every document to which any privilege ever attached. In the short run, disclosure of any privileged document probably would contribute in some measure to ascertaining the truth. Despite that fact, privileges are honored. The reason, of course, of that the authorities have decided that making certain communications privileged creates benefits (some of which improve, indirectly, the truth finding process itself) that outweigh the harm caused thereby. This policy determination is defensible in large measure because our system offers so many devices for discovering the facts and exposing the evidence—and because privileges protect only communications, not the underlying facts themselves.

Courts in other parts of the country (articulating law by which this court is not bound) that have attempted to identify the circumstances under which waiver results from disclosure of otherwise privileged material to a non-party have not considered, at least on the face of their opinions, all the factors we consider below. Perhaps for that reason, they have developed criteria for preserving the privilege that can be construed as quite demanding. If we were to apply those criteria literally to the facts here presented it is not clear what result would obtain.

In *Union Carbide v. Dow Chemical,* 619 F.Supp. 1036 (D.Del.1985), the district court declared that communications to non-parties can "retain a protective shield if the parties have a common legal interest, such as where they are co-defendants or are involved in or anticipate joint litigation. [citations omitted] ... the key consideration is that the nature of the legal interest be identical, not similar, and be legal, not solely commercial". *Id.* at 1047 [citing *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1172 (D.S.C.1974) ]. In attempting to apply these criteria to the case at bar we have encountered two substantial difficulties: it is not clear what it means, for purposes of this "test", to have a "com-

mon *legal* interest" (emphasis added) or to "anticipate *joint* litigation" (emphasis added).

Defendant in our case asserts that it had a common legal interest with GEC at the time it disclosed the opinion letter to that company. In support of this position, defendant argues that at the time the letter was shared there was a real possibility that GEC would purchase the Houston Instruments Division of defendant and that if it did the odds were quite strong that both defendant and GEC would end up defending the same product as against the same patent in one lawsuit that plaintiff could be expected to bring. In such a lawsuit defendant would be defending its marketing of the product in the years preceding the sale and GEC would be defending its marketing of exactly the same product in the years following the sale. Thus, at the time defendant and GEC were negotiating it seemed quite likely that defendant and GEC would be sued by plaintiff and that in that litigation defendant and GEC would be identically aligned, fighting to protect interests distinguished only by the time frame in which the marketing took place.

In short, it seems clear that defendant and GEC anticipated litigation in which they would have a common interest. Moreover, their common interest would have been in identical issues of law and of fact: was plaintiff's patent valid and enforceable, and, if so, did the one product that defendant and GEC marketed at different times infringe that patent? And even though in such a suit defendant and GEC presumably would not be exposed to joint and severable liability for the same damages, they could be expected to conduct a joint defense on all the liability issues.

Thus, despite the fact that GEC subsequently decided not to buy Houston Instruments, so the two companies have not ended up in a position where they face a common opponent in litigation in which they are defending identical interests, it is arguable that defendant and GEC could be said to have "anticipated *joint* litigation" as required by the *Union Carbide* test.

Since, however, we are not completely confident that the nature of the alignment between defendant and GEC at the time of the disclosure would be sufficient to satisfy courts applying the *Union Carbide* test we feel constrained to take into account policy considerations which appear not to have been fully treated in other cases in this area.

Professor Richard L. Marcus has recently described interests that can be threatened if courts are too quick to find waiver of the attorney-client privilege. *See The Perils of Privilege: Waiver and the Litigator*, 84 Mich.L.Rev. 1605 (1986). As Professor Marcus points out, the fear of waiver can inspire counsel to spend enormous amounts of energy and money screening and analyzing materials sought in discovery and rehearsing witnesses who are to be deposed. *Id.* at 1606. The pressure that inspires such expenditures can be especially intense when lawyers fear that inadvertent disclosure of a single document can cost a party its right to maintain the confidentiality of all documents that touch the same "subject matter", a phrase whose notorious elasticity deepens counsels' anxieties. Rigid application of waiver doctrine, coupled with expansive definitions of "subject matter", also create an environment in which parties feel intensified pressure to resist disclosing even inconsequential material as to which some privilege might arguably be invoked. In other words, expansive definitions of waiver can pressure lawyers to claim privilege on documents that they would otherwise disclose and to litigate tenaciously the resulting discovery disputes all because the risks of inadvertent waiver are so great. Thus expansive waiver doctrine increases the cost of litigation to the parties and increases the number of discovery disputes courts must resolve. Moreover, the risk of waiver can create an advantage for those litigants who can afford the massive expenditures often required to protect against waiver. *Id.* at 1614.

Professor Marcus also argues persuasively that the principal purpose of

waiver doctrine should be to protect against the unfairness that would result if privilege-holders were able to use, as a sword or shield, some of the information contained in the subject communication but could deny their opponents access to the remainder of the communication. It is this "truthgarbling" risk that justifies the finding of waiver, not the mere fact of disclosure. *Id.* at 1627, 1628. Inadvertent waiver should only be found where this kind of truth-garbling impairs the court's ability to do justice, and/or places an adverse party at an unfair advantage.

In cases such as this, where the disclosure was in fact voluntary but not intended to create a waiver, the court agrees with Professor Marcus that one should look at the "explicit or implicit undertaking by the recipient of the information to hold it in confidence". *Id.* at 1641. Here it seems that defendant did everything within its power to impress upon GEC the importance of maintaining the confidentiality of the letter and GEC, in turn, seems to have undertaken to hold the letter in confidence.

The commentators who wrote *Developments in the Law—Privileged Communications*, 98 Harv.L.Rev. 1450, 1629–65 (1985) propose dealing with waiver problems created by voluntary disclosure by differentiating between "partial" and "selective" disclosure. Partial disclosure occurs when a party tries to use advantageous portions of the privileged information while shielding portions that might be harmful to their case. This is a form of what Professor Marcus calls truth-garbling and must be analyzed by looking at the unfairness to the adverse party and the possible derogation of the truth-seeking function of the courts.

Selective disclosure occurs when a party shares an entire document with a selected, limited audience, as with defendant's disclosure to GEC. These kinds of disclosures generally leave the adverse party in no worse position than if no disclosure had taken place and, therefore, create no fairness issue. *Developments* suggests that the issue in these cases is one of confidentiality. So long as the information is disclosed upon conditions of and with regard for confidentiality there should be no finding of waiver. As has been stated above, defendant placed strict conditions of confidentiality upon GEC when it disclosed the opinion letter.

This court also is concerned about the effect that finding waiver too freely might have on the sort of business transaction in which defendant and GEC were involved. Holding that this kind of disclosure constitutes a waiver could make it appreciably more difficult to negotiate sales of businesses and products that arguably involve interests protected by laws relating to intellectual property. Unless it serves some significant interest courts should not create procedural doctrine that restricts communication between buyers and sellers, erects barriers to business deals, and increases the risk that prospective buyers will not have access to important information that could play key roles in assessing the value of the business or product they are considering buying. Legal doctrine that impedes frank communication between buyers and sellers also sets the stage for more lawsuits, as buyers are more likely to be unpleasantly surprised by what they receive. By refusing to find waiver in these settings courts create an environment in which businesses can share more freely information that is relevant to their transactions. This policy lubricates business deals and encourages more openness in transactions of this nature.

Another factor weighing against the finding of waiver in cases such as this is the tendency of some lawyers, especially in intellectual property cases, to spend an inordinate amount of time attempting to gain an advantage in the litigation by making use of the adversary *attorney's* words and opinions. In patent cases the primary focus should be on the real world, on the similarity of the products involved in the dispute and on the history of relevant inventions and commercial conduct. Preoccupation with efforts to paint opposing counsel into some semantic corner or to

take advantage of his choice of terms leads to costly, unproductive, and unseemly disputes.

The court is persuaded that in a close case such as this the policy concerns outlined above dictate that the attorney-client privilege should be protected and waiver should not be found. It is especially significant that defendant is not attempting to make use of any portion of the subject opinion letter at this time, thereby eliminating any of the truth-garbling or partial disclosure concerns noted above. However, if defendant attempts to make use of any portion of the opinion letter at any subsequent point in this litigation the court will reconsider this matter and is likely to find that that use, rather than the past sharing of the letter with GEC, constitutes grounds for finding waiver of the privilege.

Given the court's holding that defendant has not waived the attorney-client privilege with respect to the subject opinion letter there is no need to address defense counsel's second, independent argument that the document's protections under the work product doctrine remain intact.