**Steven M. RAYMAN and Springfield Properties Holding, Inc., Plaintiffs,**

v.

**The AMERICAN CHARTER FEDERAL SAVINGS & LOAN ASSOCIATION, Defendant.**

No. 4:CV91–3319.

United States District Court, D. Nebraska.

May 12, 1993.

Rodney M. Confer, Knudsen, Berkheimer Law Firm, Lincoln, NE, and H. Edward Hales, Jr. and S. Perry Thomas, Jr., Sutherland, Asbill Law Firm, Atlanta, GA, for plaintiffs.

Robert T. Grimit and Brenda S. Spilker, Baylor, Evnen Law Firm, Lincoln, NE, for defendant.

## MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

Pending before the court is plaintiffs' motion to compel and two pending motions to quash. (Filings 31, 37 and 38). For reasons more fully explained below, I shall grant each motion in part.

## BACKGROUND

This action concerns the business relationship between plaintiffs and defendant. On September 26, 1985 the Crest Mortgage Corporation (Crest) loaned $1 million to Springfield Partners. The loan was secured by a Deed of Trust on an apartment project known as the Springfield Apartments. The following day, Crest loaned the Springfield Partners $1.85 million in return for a wraparound mortgage (wrap mortgage) on the same property. On September 27, 1985 Crest assigned the first mortgage (Crest loan) and the Deed of Trust to defendant American Charter. Crest agreed to service that loan.

In January 1988 plaintiff Rayman purchased the wrap mortgage. By written agreement, on January 28, 1988 defendant agreed to recognize Rayman as the holder of the wrap mortgage. In April 1988 Springfield Partners filed for Bankruptcy in the Western District of Missouri. A reorganization plan was approved by that court on July 5, 1989. In June 1990 Crest ended its servicing of the Crest loan and American Charter began servicing the loan.

One year later, June of 1991, Rayman notified Springfield Partners of a default in payment of the wrap mortgage. Later that month American Charter notified Springfield Partners of a default on the Crest loan. On July 30, 1991 Ed Hales, counsel for plaintiffs, contacted American Charter through its then attorney, Richard P. Garden, Jr., and informed American Charter of potential claims which could be brought by plaintiffs in Missouri state court if American Charter's notice of default was not withdrawn.

The parties began a series of negotiations through their counsel which culminated in plaintiffs paying American Charter the principal remaining on Crest loan. To raise the necessary funds, plaintiffs sold the Springfield Apartment project. Plaintiffs allege that because of the limited time available to sell the property and pay off the loan, the selling price was less than the true value of the property causing plaintiffs lost profits. After the sale, Hales informed Garden that plaintiffs intended to bring suit in this court. Hales sent Garden the proposed pleadings by fax on October 15, 1991. Plaintiffs filed the complaint on October 18, 1991.[1]

On November 22, 1991 plaintiffs propounded interrogatories and requests for production to defendant who objected to a number of the requests for production on various grounds including relevance, overbreadth, attorney-client privilege and work product. On December 16, 1992 defendant American Charter merged with Metropolitan Federal Savings Bank. Hales allegedly wrote a letter to defendant's counsel, Robert T. Grimit, on January 8, 1993 stating that any information regarding this litigation given by American Charter to Metropolitan during merger negotiations was covered by discovery request No. 2.[2] Plaintiffs filed the motion to compel on February 1, 1993. (Filing 31).

On February 12, 1993 plaintiffs served a deposition notice and subpoena on Garden. The subpoena instructed Garden to bring a large number of documents in his possession pertaining to this dispute to the deposition. Defendant and Garden each moved to quash the subpoena on February 17, 1993. (Filings 37 & 38). Noting that the briefs and affidavits presented to the court contained inadequate information to make a ruling, I ordered that certain documents be submitted to the court for an *in camera* inspection. (Filing 46). Those documents have been provided and reviewed.

Plaintiff's motion to compel seeks the production of 4 classes of documents:

1. Documents pertaining to servicing of the wrap loan and the Crest loan after Crest ceased servicing the loans and American Charter took over servicing of the loans;

2. Documents pertaining to the merger of American Charter with Metropolitan Financial Corporation;

3. Documents American Charter has refused to produce under claims of privilege;[3]

4. Examination reports or inquiries from the Office of Thrift Supervision and other state and federal regulatory agencies with regard to the transactions that have given rise to this litigation.

See filing 31. I shall discuss each category of documents individually.

## LOAN SERVICING DOCUMENTS

Plaintiffs seek the production of documents pertaining to American Charter's servicing of the loans at issue in this action. Defendant's response is that all such documents have previously been produced pursuant to other requests for discovery. Counsel for defendant alleges that an affidavit of James E. McAndrew, Assistant Vice President of

---

1. Garden is not an attorney of record in this action. Hales is co-counsel for plaintiffs.

2. Request 2 seeks production of:

   All documents which refer to, pertain or otherwise relate in any way whatsoever to the Property, the Crest Loan, the Wrap Loan, the First Tender, the Second Tender and/or the Servicing Agreement including, without limitation, all documents which refer to or relate in any way to any appraisals or valuations performed on the Property, all underwriting files, credit files, construction files, loan files, servicing files, all listing agreements, contracts, written offers (or documents pertaining to oral offers)

   regarding the Property, and all documents regarding or concerning communications with any party whatsoever regarding the Property, the Crest Loan, the Wrap Loan, the First Tender, the Second Tender and/or the Servicing Agreement.
   Filing 31, Ex. B at 9.

3. These documents include those plaintiffs sought through both the motion to compel and the Garden subpoena. Many of the documents possessed by Garden are the same as those sought by plaintiffs in the motion to compel. Discussion of the motions to quash therefore may be combined with the discussion of this category of documents in the motion to compel.

American Charter[4] demonstrates that all such documents have previously been produced. The affidavit[5] states that McAndrew conducted a search for additional records regarding the loan servicing and produced further documents not previously produced. He states, "to the best of my knowledge the 'servicing' file of American Charter would have been previously produced." (McAndrew affidavit at 2).

■ *Fed.R.Civ.P.* 34 governs the production of documents. The rule is somewhat ambiguous regarding what type of statement must be made by a party who refuses to produce a document on the grounds that the document has previously been produced. The rule provides for a "written response" to be made within 30 days after the service of the request; the response must state the reasons for any objection. *Fed.R.Civ.P.* 34(b). The notes accompanying the rule state:

> The procedure provided in Rule 34 is essentially the same as that in Rule 33, as amended, and the discussion in the note appended to that rule is relevant to Rule 34 as well.

Rule 34, Notes of Advisory Committee on Rules, 1970 amendment. Rule 33 requires that answers to interrogatories be given under oath and signed by the party making the statement. *Fed.R.Civ.P.* 33(a). Rule 34 contemplates that a request for production will result in either objection to the request or actual production of the documents; both tasks may be completed by an attorney. Rule 33 contemplates either a response by the party or an objection by the attorney. In this situation, plaintiffs' request resulted in neither an objection nor production; rather, defendant responded by stating that the documents had been produced. The comment quoted above indicates that in such a situation, the proper procedure for making the response is that mandated by Rule 33, which requires responses by the party under oath.

Here, plaintiffs requested the production of documents. Defendant's response is not properly characterized as an objection because no claim of privilege, overbreadth or irrelevance is made. Rather, defendant claims that the documents have been produced. Compliance with Rule 34 requires that such a response from defendant be made under oath. Thus the briefs of defendant's counsel claiming that all such documents have been produced is insufficient to satisfy the rule. McAndrew's affidavit states that "to the best of [his] knowledge" the requested documents "would have been previously produced." While he may be attempting to indicate that all of the requested documents in this category have been produced to plaintiffs, the affidavit does not clearly say that. While defendant may have provided all the documents in this category, it has failed to make a clear and specific statement of such compliance under oath. Therefore, I conclude this portion of plaintiffs' motion to compel should be granted. I shall order the defendant to produce all documents in this category which have not previously been produced. If all such documents have been produced, defendant should clearly indicate that fact under oath.

## MERGER DOCUMENTS

■ Plaintiffs seek production of documents relating to this litigation provided to Metropolitan by American Charter in the course of negotiations which culminated in the merger of the two corporations. Defendant resists the motion on three grounds: 1) documents were not requested in the request for production; 2) corporate privilege; and 3) work product. Plaintiffs propounded the request for production of documents on November 22, 1991; defendant responded to the request on January 13, 1992. (See filing 31, ex. 2). Months after the request for production was answered defendant entered into negotiations with Metropolitan. The merger was completed in December 1992. Defendant alleges that at the time the request for production of documents was propounded

---

4. Although American Charter is now part of Metropolitan, I shall refer to the company as American Charter unless the context of a claim requires differentiation of the corporations.

5. The affidavit is included in the defendant's evidence in response to plaintiffs motion to compel. (See Filing 36, ex. E).

and answered no documents pertaining to the American Charter–Metropolitan merger could have been in existence because no merger negotiations had taken place.

Defendant's position is correct. At the time the request for production of documents was made and answered, the conversations and documents made in connection with the merger could not have been in existence. The request predated the merger conversations. Plaintiffs seem to be asserting a general duty to supplement discovery responses. Rule 26 clearly states:

> A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired.... [6]

*Fed.R.Civ.P.* 26(e). For this reason plaintiffs' motion to compel production of documents pertaining to the American Charter–Metropolitan merger will be denied. However, it is likely that plaintiffs will renew their request and this court will once again be faced with defendant's claims of privilege. For reasons of judicial economy, I shall address the privilege claims.

Defendant indicates that communication between American Charter and Metropolitan with respect to this litigation was limited. Robert T. Grimit, counsel for defendant, states in an affidavit that the information provided to Metropolitan regarding this litigation was the pleadings, briefs and discovery responses, all of which are contained in the court file, and a litigation report. Defendant will not be required to produce copies of documents found in the court file. Regarding the "litigation report," defendant alleges the following material was provided to Metropolitan:

> a document entitled "Disclosure Schedule to Agreement and Plan Merger" (which contains a document entitled "Disclosure Schedule 2.8" containing a brief reference to the general nature of the lawsuit, "Disclosure Schedule 2.13" containing the same general reference to this litigation, and a portion of the monthly litigation report

prepared by American Charter's counsel with respect to this litigation). The monthly litigation report is a report prepared by counsel with respect to various litigation matters and furnished on a monthly basis to the Board of Directors so that it will be apprised on the current status of the ongoing litigation.

Filing 36, ex. A at 2.

Defendant argues that the information provided to Metropolitan is privileged. Defendant correctly notes that the established law recognizes that a surviving corporation following a merger possesses all of the privileges of the pre-merger companies.[7] (Def.Br. in Opp. at 4, citing *O'Leary v. Purcell Co., Inc.,* 108 F.R.D. 641 (M.D.N.C.1985); *Accord Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.,* 689 F.Supp. 841 (N.D.Ill.1988)). However, this proposition alone is insufficient to shield defendant from production of this category of documents. The holdings in *O'Leary* and *Medcom* effectively state that in the purchase of a company, the assets purchased include the privileges the subsidiary company holds at the time the sale is completed.

■ Plaintiffs argue that any privilege held on the documents produced to Metropolitan was waived by the production to Metropolitan prior to the consummation of the merger. At the time the documents were produced to Metropolitan, it was a stranger to this litigation and therefore, the argument continues, the production of the documents waived the privilege. If this argument is correct, defendant would have held no privilege on the documents at the time the sale to Metropolitan was completed, having waived it months earlier during the merger negotiations, and would have then possessed no privilege to sell to Metropolitan. Thus, this issue may be resolved only by determining, first, if the documents sent by defendant to Metropolitan were privileged and if so, was the privilege waived by the disclosure of the documents to Metropolitan during the merger negotiations.

---

**6.** The rule provides exceptions, none of which is applicable in this instance.

**7.** Counsel indicates defendant wishes to assert all possible privileges.

## 1. Attorney–Client Privilege

Rule 501 of the Federal Rules of Evidence states:

> [I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

*Fed.R.Evid.* 501. In this action the substantive laws of the state of Nebraska apply. Thus, Nebraska law governs the question of attorney-client privilege. *Neb.Rev.Stat.* § 27–503(2) provides:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (a) between himself or his representative and his lawyer or his lawyer's representative, or (b) between his lawyer and the lawyer's representative, or (c) by him or his lawyer to a lawyer representing another in a matter of common interest, or (d) between representatives of the client or between the client and a representative of the client, or (e) between lawyers representing the client.

*Neb.Rev.Stat.* § 27–503(2).

■ The party asserting a privilege has the burden of proving its existence. *McFadden v. Norton Co.*, 118 F.R.D. 625, 627 (D.Neb.1988), citing *FTC v. Shaffner*, 626 F.2d 32, 37 (7th Cir.1980); *Heathman v. United States District Court*, 503 F.2d 1032, 1033 (9th Cir.1974); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (W.D.Pa.1979); *Pleasant Hill Bank v. United States*, 58 F.R.D. 97, 101 (W.D.Mo.1973). Defendant alleges the litigation reports provided by defendant to Metropolitan are protected from discovery by the attorney-client privilege. The litigation reports were generated by attorney Richard P. Garden, Jr. of the Cline, Williams, Wright, Johnson & Oldfather law firm (Cline Williams). Garden is the general counsel for American Charter and represented it in various litigation including the Springfield Partners bankruptcy and the negotiations with plaintiffs which resulted in this litigation.

Cline Williams produces a monthly report of all of the "significant litigation involving American Charter" and presents it to the Board of Directors of American Charter. (Garden Affidavit, filing 52 at 8).

■ The litigation reports are communications between defendant and defendant's attorneys. The litigation reports update defendant on the progress on pending litigation and provide a basis for making legal decisions such as whether to proceed with the defense of a case and whether settlement is a desirable course of action. As such, the communication facilitates the rendition of professional legal services to the client. Garden's affidavit indicates copies of the reports were provided only to the Board of Directors. I conclude the litigation reports prepared by Cline Williams for the Board of Directors are privileged attorney-client communication.

## 2. Waiver

Plaintiffs claim that defendant waived the attorney-client privilege on the litigation reports during merger negotiations. Essentially, plaintiffs argue that the production of documents to a third party, Metropolitan, effected a waiver of any privilege on the documents. A review of the circumstances surrounding the disclosure reveals that defendant entered into negotiations with Metropolitan after this action had been filed. The negotiations were aimed at completing a business merger. The negotiations began after this action had been filed. Presumably, defendant supplied Metropolitan with information on this lawsuit so that Metropolitan would be more fully informed of the potential liability it would take on by merging with American Charter. The merger was completed approximately two months later, and defendant currently is a portion of the surviving corporation, Metropolitan.

The facts in this case are similar to those in *Hewlett Packard Co. v. Bausch & Lomb Inc.*, 115 F.R.D. 308 (N.D.Cal.1987). That action was a patent infringement case. Bausch & Lomb entered into merger negotiations with a non-party, GEC, to whom it provided an "attorney opinion letter" concerning "the validity and possible infringe-

ment" of the patent at issue. *Id.* at 308. The disclosure took place before the patent litigation began. The merger negotiations ended with no sale of assets taking place.

Noting that litigation was reasonably anticipated at the time the disclosure was made, the court stated that Bausch & Lomb had a legal duty to inform GEC of the possible liability involved in a merger. *Id.* Beginning from that point, the court determined that equitable interests weighed in favor of finding no waiver of privilege despite an assumption that the plaintiff had a substantial interest in viewing the document disclosed to GEC.[8] The court noted a two-part test set forth in *Union Carbide v. Dow Chemical*, 619 F.Supp. 1036 (D.Del.1985) which holds that

> communications to non-parties can "retain a protective shield if the parties have a common legal interest, such as where they are co-defendants or are involved in or anticipate joint litigation [citations omitted] ... [T]he key consideration is that the nature of the legal interest be identical, not similar, and be legal, not solely commercial". *Id.* at 1047 [citing *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1172 (D.S.C.1974) ].

*Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. at 309.

The court found, and I agree, that the test is not clear as to the meaning of "common *legal* interest" and "anticipate *joint* litigation." *Id.* at 310, (emphasis supplied). Nonetheless, the court found that Bausch & Lomb did have a common legal interest with GEC and an anticipation of joint litigation. It reasoned that if the merger was completed, GEC would confront the same problems giving rise to the patent litigation against Bausch & Lomb.

> Thus, at the time defendant and GEC were negotiating it seemed quite likely that defendant and GEC would be sued by plaintiff and that in that litigation defendant and GEC would be identically aligned,

fighting to protect interests distinguished only by the time frame in which the marketing took place.

*Id.* at 310.

Similarly, in the case at bar, at the time negotiations were proceeding, it must have been apparent to both Metropolitan and American Charter that if the merger were completed, Metropolitan would be defending this action. This case provides less room for speculation than did *Hewlett–Packard:* litigation here was not anticipated; it was a reality. Applying the *Union Carbide* test to this action, as did the court in *Hewlett–Packard,* defendant and Metropolitan "anticipated litigation in which they would have a common interest. Moreover, their common interest would have been identical issues of law and fact...." *Id.*[9]

Reaching past the *Union Carbide* decision, the court·in *Hewlett–Packard* considered a number of policy considerations in support of finding no waiver. It noted that a commentator argued

> persuasively that the principal purpose of waiver doctrine should be to protect against the unfairness that would result if privilege-holders were able to use, as a sword or shield, some of the information contained in the subject communication but could deny their opponents access to the remainder of the communication. It is this "truthgarbling" risk that justifies the finding of waiver, not the mere fact of disclosure.

*Id.* at 310–11, citing Marcus, *The Perils of Privilege: Waiver and the Litigator,* 84 Mich.L.Rev. 1605, 1627–28 (1986).

After reviewing the litigation reports submitted *in camera,* I conclude the information American Charter provided to Metropolitan during merger negotiations is not of the type that the defendant could use as a sword or shield, nor is it of the nature which could be useful to defendant at trial in some "selec-

---

8. The court did not have an opportunity to view the document but assumed almost a "worst-case scenario" that the document espoused a legal theory contradictory or inconsistent with the theory presented by Bausch & Lomb in the action.

9. The court reached its conclusion despite the fact that Bausch & Lomb and GEC did not complete the sale and did not have to litigate the same issues in fact, reasoning that *Union Carbide* only required that joint litigation be *anticipated. Hewlett–Packard* at 310.

tive" respects but harmful in others. *See Id.* at 311, citing *Developments in the Law— Privileged Communications,* 98 Harv.L.Rev. 1450, 1629–65 (1985). The litigation reports include defense counsel's analysis of the case, the present posture of the action, estimated cost of defending the suit, and actual expenses incurred to date. Defendant's disclosure of this information to Metropolitan leaves plaintiffs "in no worse position than if no disclosure had taken place and, therefore, creates no fairness issue." *Id.*

*Hewlett–Packard* discussed two more policy reasons supporting its "sellers group" theory. First, it noted that finding a waiver could adversely affect the type of business transactions there involved. I agree. Procedural rules generally should not be enacted which result in reduced communication between buyers and sellers.

> Legal doctrine that impedes frank communication between buyers and sellers also sets the stage for more lawsuits, as buyers are more likely to be unpleasantly surprised by what they receive.

*Id.* The second policy reason recognized that courts should not encourage

> the tendency of some lawyers . . . to spend an inordinate amount of time attempting to gain an advantage in the litigation by making use of the adversary *attorney's* words and opinions. . . . [Such a practice] leads to costly, unproductive, and unseemly disputes.

*Id.* at 311–12 (emphasis supplied).

The factors, both legal and equitable, involved in plaintiffs' motion to compel production of this category of documents lead to the conclusion that the documents sent by defendant to Metropolitan in the course of merger negotiations are not discoverable. Plaintiffs failed to properly request the documents in their request for production. Future attempts to require production would be fruitless because of the attorney-client privilege; no waiver of that privilege took place

through the disclosure of those documents to Metropolitan prior to the time the merger was completed. I shall deny plaintiffs' motion to compel production of these documents.

### CLAIMS OF PRIVILEGE

Defendant objected to the production of a number of documents on the grounds of privilege, overbreadth and relevance. Plaintiffs' motion to compel groups these documents into one category. Defendant's motions to quash also concern this group of documents. Defendant submitted 95 documents for *in camera* inspection. Because of the number of documents and the impracticality of considering the threshold question of relevance with each document, I shall first consider the claims of privilege before discussing relevance.

1. *Attorney–Client Privilege*

Earlier, I stated the Nebraska standard for attorney-client privilege. Four categories of privileged documents appear within the defendant's submission: (1) letters and memoranda between defendant and counsel[10] representing defendant during the Springfield Partners bankruptcy; (2) letters and memoranda between the attorneys representing defendant in the bankruptcy; (3) letters and memoranda between defendant and its counsel regarding this action; and (4) letters and memoranda between attorneys representing defendant in connection with this action. The explanatory affidavits of Garden and William O. Reifler, Vice President of American Charter, and the notations on the documents indicate that no copies of any document were prepared for any individual other than a representative of defendant or an attorney representing defendant. Therefore, no confidentiality concerns arise from the preparation and distribution of the documents.

---

**10.** A number of firms represented defendant in various portions of the bankruptcy and the present litigation. Of the 95 documents, a number of letters to or from the following firms are included: Ellis, Ellis & Black of Springfield, MO (oversight of the sale of the Springfield Apartments); Shughart, Thompson & Kilroy of Kansas City, MO (bankruptcy); Cline, Williams, Wright, Johnson & Oldfather of Lincoln (general counsel for defendant); Carson, Coil, Riley, McMillin, Levine & Veit of Jefferson City, MO (potential Missouri litigation) and Baylor, Evnen, Curtiss, Grimit and Witt of Lincoln (defendant's counsel of record in this action).

The following documents are communication between defendant's employees and counsel representing defendant regarding the Springfield Partners bankruptcy: 3, 4, 6, 7, 8, 41 and 48. These documents are privileged from discovery by the attorney client privilege.

The following documents are communication between attorneys representing defendant regarding the bankruptcy and are privileged: 1, 2, 5, 40, 46, 47, 49, and 50.

The following documents are communication between defendant and attorneys representing it regarding this action: 9, 10, 15A, 15B, 16–19, 21, 23, 24, 26, 27, 30, 32–35, 44, 94A and 94B. These documents are privileged from discovery.

· The following documents are communication between attorneys representing defendant in this action: 11–14, 20, 22, 28, 29, 36, 38, 39, 43, 45, 51–65, 67, 69–73, 79–81, 83, 84, 91 and 92. These documents are privileged from discovery.

Document 37 is a letter from Richard P. Garden, Jr. to William O. Reifler, Vice President of American Charter. The letter itself is protected from discovery by the attorney-client privilege. The letter indicates that non-privileged documents [11] were enclosed with the letter.[12] The enclosures are not protected from plaintiffs' discovery requests.

Document 42 is a letter from Stephen H. Nelsen, an attorney at Cline Williams, to Osher. The letter itself is privileged from discovery by the attorney-client privilege. The letter indicates that a non-privileged enclosure was included.[13] That enclosure is not protected from plaintiffs' discovery requests.

Document 66 is a letter from the Baylor law firm to Darwin J. Lookingbill of the Oppenheimer, Wolff & Donnelly law firm in Minneapolis, Minnesota. It indicates that a number of non-privileged documents were included. The letter is protected from discovery by the attorney-client privilege. The documents are not protected. However all of the documents listed in the letter are contained in the court file.[14] Because plaintiffs should have received copies of the listed enclosures from the court and through service, I shall not require defendant to produce copies of these documents.

Document 68 is a letter from Garden to Mike Nilles, counsel for Metropolitan. The letter encloses copies of plaintiffs' answers to interrogatories and the court's order regarding defendant's motion to dismiss. Again, I shall not require defendant to produce these documents for plaintiffs.

Document 78 contains the minutes of Board of Directors meetings for American Charter. The documents discuss information provided to the Board by Garden. The information was provided through litigation reports, documents 39 and 79, which are protected from discovery by the attorney-client privilege. The portions of document 78 referring to the litigation reports and the information contained therein are protected from discovery by the attorney-client privilege. The remaining material in document 78 is not privileged.

Document 95A and 95B are the same document. Defendant claims portions of 95A contain privileged communication. Defendant redacted the purportedly privileged portions of 95A and produced the remainder of the document to plaintiffs. The document produced to plaintiffs is 95B. The portion of 95A defendant redacted is protected by the attorney-client privilege. Defendant proper-

---

11. Defendant did not submit for inspection the enclosures to this or any other letter which contained enclosures. To the extent that such enclosures may be privileged, or have been previously produced for plaintiffs, defendant has failed to provide any such statements to the court.

12. The enclosures listed are correspondence from Crest Savings dated April 23, 1990 and May 11, 1990 and correspondence between Rich Osher, Vice President of American Charter, and Ed Hales, plaintiffs' co-counsel dated June 11, 1990 and June 21, 1990 and two file memoranda.

13. The letter indicates that the enclosure was a "fully executed, original Note Modification Agreement."

14. The letter indicates that copies of the following documents are enclosed: the complaint, motion to dismiss, brief in support of motion to dismiss, plaintiffs' brief in opposition to motion to dismiss; reply brief, answer, and memorandum regarding the motion to dismiss.

ly produced the non-privileged portions of the document to defendant in 95B.

## 2. Work Product Doctrine

Defendant alleges that a number of documents are protected from discovery by the work product doctrine. *Fed.R.Civ.P.* 26(b)(3) provides that documents "prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, consultant . . . or agent)" are not discoverable absent a showing of substantial need and inability to obtain "the substantial equivalent" of the documents without undue hardship. Such documents need not be prepared in anticipation of the pending litigation or trial to be protected from discovery under Rule 26(b)(3). *See In re Application of Minebea Co., Ltd.,* 143 F.R.D. 494, 500–01 (S.D.N.Y.1992).

The documents defendant claims are protected by this rule pertain to two actions: the Springfield Partners bankruptcy and the case at bar. Reviewing the documents submitted *in camera,* I conclude it is unnecessary to determine when the Springfield Partners bankruptcy could be anticipated because all pertinent documents submitted for review which relate to that litigation were prepared after the bankruptcy petition was filed. However, some question exists whether documents prepared with respect to the case at bar were created "in anticipation of litigation" for Rule 26(b)(3) purposes. It is therefore necessary to determine what event triggered the protection of the rule.

Defendant alleges that the determining event took place on July 30, 1991 when Hales contacted defendant through Garden and stated that plaintiffs held potential claims which could be brought in a civil action in Missouri state courts if defendant failed to withdraw its notice of Springfield Partner's default. This court considered the general question of what types of events trigger the protection of Rule 26(b)(3) in *McFadden v. Norton Co.,* 118 F.R.D. 625 (D.Neb.1988). In that case the defendant's insurance company received a letter stating that General Casualty Company would be seeking reimbursement from defendant for worker's compensation benefits paid to plaintiff. *Id.* at

628. Defendant's attorney submitted an affidavit stating that such notices "almost always" resulted in litigation. I concluded that such facts were insufficient to indicate that the letter triggered Rule 26(b)(3) protection. *Id.* at 631.

*McFadden* employs a restrictive view of the work product doctrine. It stands for the proposition that events which trigger negotiations, investigations and reports regarding the efficacy of potential claims are not necessarily sufficient to trigger the work product protection. Work done in the ordinary course of business, rather than in anticipation of litigation in a particular case, does not fall within the rule's purview. Considering the defendant's position, I said:

> Even if it had been shown that a majority of claims submitted to the defendant resulted in litigation, there is no factual basis set forth in the affidavit for [defendant's corporate counsel's] anticipating that *this particular claim* would have to be litigated, as opposed to negotiated.

*McFadden v. Norton Co.,* 118 F.R.D. at 631 (emphasis added).

In the case at bar, plaintiffs informed defendant of potential claims which could be brought unless defendant took certain actions. At that point although litigation was a distinct possibility, there was nothing produced here to establish that it was then reasonably expected. Indeed, a period of negotiation ensued with a result other than litigation. Defendant did not pursue its notice of default against the Springfield Partners, and plaintiffs agreed to pay off the Crest loan. At that point litigation had been averted. While it is true that plaintiffs later brought this lawsuit, it is not entirely of the nature mentioned in the July 30, 1991 Hales–Garden telephone conversation. A number of the claims in the complaint actually arose during the settlement negotiations, after that conversation.

As in *McFadden,* defendant has failed to demonstrate that it possessed a reasonable anticipation that litigation, as opposed to negotiation, would result from the Hales telephone call. Plaintiffs' position in that conversation was that potential claims existed

and could be raised. However there was no certainty that they would be raised. Plaintiffs provided defendant a way to avoid potential litigation, through withdrawing the notice of default. At that point, defendant was left to evaluate its factual and legal footing and determine an efficacious course of action, and the documents submitted *in camera* establish that it did just that. Rather than refuse to drop the notice of default, and face the potential litigation, defendant chose to negotiate a settlement. The negotiations did eventually lead to defendant dropping the notice of default, thus presumably increasing the probability that no litigation would ensue.

I conclude that defendant's claim that the Hales telephone call provided defendant with a reasonable basis for anticipating litigation is without merit. Too many alternatives to litigation remained on the table at the time that call was made to presume litigation was imminent. Defendant does not propose another date from which to trigger the work product doctrine. However, a review of the evidence and exhibits submitted in support of defendant's resistance to the motion to compel satisfies the court that litigation could be reasonably anticipated when Hales presented a copy of the complaint in this action to Garden via fax.[15] When defendant received a telecopy of the proposed complaint along with a statement that the complaint would be filed in this court, litigation, rather than negotiation or investigation, could be reasonably anticipated. I shall use October 15, 1991 as the date triggering the work product protection.

A number of documents are handwritten notes of attorneys at Cline Williams prepared for the bankruptcy or this action, including research for the motion to dismiss, answer and discovery privileges. The notes were prepared by Garden, Nelsen and Andrew D. Strotman. These documents are numbers 74, 77, 82, and 86–88; they are protected from discovery by the work product doctrine.

Document 75 is a chronology prepared by Garden to inform Robert Grimit, counsel of

record in this action of the background of the case. This document is protected from discovery by the work product doctrine. Document 85 is a compilation of research completed by Stephen H. Nelsen, attorney at Cline Williams, regarding the bankruptcy. This document is protected from discovery by the work product doctrine.

Document 76 contains a document index regarding this action and the bankruptcy. The items within document 76 are divided into privileged and non-privileged sections. Defendant states that copies of all documents in the non-privileged section have been disclosed to plaintiffs. No documents in the privileged section have been disclosed. With the exception of one item in the privileged section, the undisclosed portions of document 76 are protected from discovery by the work product doctrine. Document 76 contains a "document index." Listed as item 39 on that index is a memorandum dated July 18, 1990 regarding the termination of servicing. The memorandum itself was prepared well before this litigation began. It is a file memorandum authored by Dave Johnson, who is not identified in any of defendant's submissions. The document is a file copy for American Charter. Defendant has submitted no information that the document was prepared for an attorney to receive legal advice. Rather, it appears to be a memorandum prepared in the ordinary course of business which was provided to defendant's attorneys at a later date. Defendant has failed to demonstrate that this item is privileged.

3. *Waiver*

Plaintiffs claim that three events took place which "probably" waived the attorney-client privilege and work product protection for certain information. First, defendant produced certain documents regarding this information while negotiating a merger with Metropolitan. Second, Garden disclosed certain facts to plaintiffs' counsel in correspondence. Third, during a deposition, William Reifler, a Senior Vice–President of American Charter stated that he relied on advice of Garden when he declared Springfield Part-

---

**15.** This fax transmission took place on October 15, 1991, three days before the complaint was filed.

ners defaulted on the Crest loan. Because I have previously found, *supra*, plaintiffs' first waiver claim to be without merit, I shall discuss only the second and third claims.

In the second claim, plaintiffs allege that in conversations with Hales, Garden "asserted a legal position attempting to justify Defendant's actions in this case." Plaintiffs claim these assertions waived the attorney-client privilege with respect to the "legal justification for Defendant's action." Plaintiffs assert that "Defendant, and Garden, must answer questions regarding the factual basis for any legal position they take." (Pl.Reply Br. at 13).

Plaintiffs' third claim is that Reifler's statement that counsel's advice was relied upon when the decisions were made to declare the Crest loan in default and refuse to accept Rayman's tender offers constitutes a waiver of the attorney-client privilege. Plaintiffs allege the scope of the waiver extends to

> any communications (whether written or oral), to or from Mr. Garden, concerning the basis for refusing to accept Mr. Rayman's tenders. Garden must testify about the basis, both legal and factual, for refusing to accept the tenders and any other communication leading up to that decision, to the full extent of his knowledge thereof.

Pl. Reply Br. at 14. Plaintiffs cite no authority to support their waiver claims.

I cannot agree with plaintiffs' waiver claims. Essentially, plaintiffs' argument is that because Garden and Reifler disclosed information that certain facts existed, they must be compelled to disclose the actual facts. Such a theory would destroy the attorney-client privilege. Reifler's comment, for instance, indicated that his attorney had provided legal advice on a specific topic. Plaintiffs claim such a comment waives the privilege. They could just as easily claim that defendant's privilege list also waives the privilege. That list contains information on documents defendant claims are privileged. For each document, the list provides the document's date, author, recipient, subject and to whom copies were provided. The information in the list is provided so that plaintiffs and the court may determine whether the documents are privileged.

Were the court to adopt plaintiffs' privilege theory, plaintiffs could next request production of every document on the privileged list, claiming that defendant had disclosed the fact that defendant's counsel had provided information on a certain topic of law contained in the document. Similarly, plaintiffs could request all of the factual and legal analysis compiled by defendant's counsel on the basis that the answers to the complaint reflect a legal theory which defendant waived by merely filing an answer. Plaintiffs' theory expands the scope of a waiver far past its permissible bounds. I conclude that none of the three instances cited by plaintiffs constituted a waiver of defendant's attorney-client privilege.

Plaintiffs have failed to demonstrate that defendant waived the privilege of any document which I have determined above to be privileged. Therefore, to the extent that I have determined the above described documents are privileged, I shall deny plaintiffs' motion to compel, and shall grant defendant's motions to quash.

### 4. *Relevance*

█ Plaintiffs' motion to compel may be granted only to the extent that it seeks non-privileged information that is relevant to the subject matter of this action, or is reasonably calculated to lead to admissible evidence. *Fed.R.Civ.P.* 26(b)(1). While the determination of relevance is a threshold issue, the mass of documents submitted for *in camera* review dictated that I address the relevance issue to those documents which are not privileged. Those are documents 25; 31; 37 (enclosures to letter); 42 (enclosure to letter); item 39 of document 76; 78 (portions of Board of Directors minutes not discussing litigation report); 89; 90; and 93.

Documents 25 and 93 are essentially the same item. The documents are correspondence from Garden to American Charter indicating that billing statements were sent by a law firm in Kansas City, Missouri, which performed various legal services for defendant. Document 25 is the cover letter; document 93 is the cover letter and the actual billing statement. Because the documents

do not provide any type of legal advice, they are not covered by the attorney-client privilege. However, I cannot determine how these documents could be relevant to any issue in this case. The amount of defendant's legal fees in this action and in the bankruptcy action have not been shown to be relevant to plaintiffs' claims. I conclude documents 25 and 93 are not relevant and will not lead to any admissible evidence. As such, I shall deny plaintiffs' motion to compel production of these documents.

Similarly, documents 31, 89 and 90 are not relevant. Document 31 is billing statement prepared by the attorney in Springfield, Missouri who represented defendant during the closing of the sale of the Springfield Apartments. Documents 89 and 90 are time slips and billing statements prepared by Cline Williams. These documents do not transmit legal advice of any type and are prepared in the ordinary course of business, as opposed to in anticipation of litigation. As such, they are not protected by the attorney-client privilege or the work product doctrine. However, the documents are not relevant to this action, nor would they lead to admissible evidence. I shall deny plaintiffs' motion to compel production of these documents.

According to the descriptions contained in the privileged cover letters, the enclosures included in documents 37 and 42 relate directly to this action. Also, item 39 in document 76 relates to this action. I conclude these items are relevant and must be disclosed. I shall order defendant to produce the enclosures included in documents 37 and 42, and item 39 of document 76 or provide a sworn statement that such documents have previously been disclosed.

Document 78 contains the American Charter's Board of Directors' minutes. As noted above, a portion of the minutes are privileged. The remaining statements contained in the minutes contain no discussion of this case, or of the facts giving rise to this litigation. I conclude the non-privileged information in the minutes is irrelevant. I shall deny plaintiffs' motion to compel production of this document.

## EXAMINATIONS OF REGULATORY AGENCIES

■ Plaintiffs seek production of documents produced by federal and state regulatory agencies regarding the examination of American Charter. As discussed below, defendant argues that the documents prepared by the Office of Thrift Supervision (OTS) are the property of OTS and defendant does not have the power to produce such documents. Defendant does not indicate whether any other federal or state agency regulates it, whether such agencies have produced any documents which are subject to production under plaintiffs' requests, or why such documents should not be produced. I shall therefore order the defendant to produce any documents prepared by a federal or state regulatory agency other than OTS which was sought by plaintiffs in the request for production. If no such documents exist, defendant should so indicate under oath in accordance with the comment following *Fed. R.Civ.P.* 34.

American Charter claims the Examination Reports prepared by OTS are the property of OTS, confidential, and may not be produced by defendant pursuant to a discovery request. Defendant cites to 12 C.F.R. § 510.5 in support of its claim. That regulation provides:

(b) Prohibition against disclosure. Except as otherwise authorized by this part or otherwise by the Office, no officer, employee, or agent of the Office shall disclose or permit the disclosure of any unpublished information of the Office to anyone (other than an officer, employee, or agent of the Office properly entitled to such information for the performance of their official duties), whether by giving out or furnishing such information or a copy thereof or by allowing any person to inspect, examine, or copy such information or copy thereof, or otherwise ...

(c) Advice by person served. If any person, whether or not an officer or employee of the Office, has information of the Office that may not be disclosed under the regulations of the Office, or other applicable law, and in connection therewith is served with a subpoena, order, or other process

requiring personal attendance as a witness or production of documents or information in any proceeding, that person shall promptly advise the Office of such service or request for information.

(d) *Appearance by person served.* Except as the Office has authorized disclosure of the relevant information, or except as authorized by law, any person who has information of the Office that may not be disclosed under these rules and is required to respond to a subpoena or other legal process shall attend at the time and place therein mentioned and respectfully decline to produce such information or give any testimony with respect thereto, basing such refusal on this part. If, notwithstanding, the court or other body orders the disclosure of such information or the giving of such testimony, the person having such information of the Office shall continue respectfully to decline to produce such information and shall promptly advise the Litigation Division, Office of Thrift Supervision.

12 C.F.R. § 510.5.

Defendant directs the court's attention to an unreported opinion from the United States District Court for the Eastern District of Pennsylvania which held that this regulation provides grounds for refusing to produce documents described in the regulation. *In re Atlantic Financial Securities Litigation,* Civ. A. No. 89–645, 1992 W.L. 50074

(E.D.Pa., March 3, 1992). Further, the court reasoned that the plain language of the regulation requires the court to refuse the opposing party's motion to compel production of the document. *Id.* at 2.

Although the order is not controlling, I find its reasoning compelling.[16] I agree that the regulation precludes defendant from producing the examination documents plaintiffs request. It also makes clear that if this court grants plaintiffs' motion to compel, defendant would be bound to refuse to comply with the order. Such a result, clearly envisioned by the regulation, demonstrates that the court must not grant plaintiffs' motion. The regulation itself provides plaintiffs recourse in this matter. 12 C.F.R. §§ 505 and 510 allow individuals to request these documents directly from OTS.[17] Obviously, that route, rather than an order of this court, is the proper path for plaintiffs to follow in gaining access to the documents they seek. I shall deny plaintiffs' motion to compel production of the reports and inquiries of the OTS.

IT THEREFORE HEREBY IS ORDERED:

1. Plaintiffs' motion to compel, filing 31, and defendant's motions to quash, filings 37 and 38, are granted, in part, in accordance with the terms of this memorandum.

---

**16.** Another persuasive case cited by defendant involves a motion to compel documents held by a bank. *Federal Home Loan Bank Board v. Superior Court of the State of Arizona,* 494 F.Supp. 924 (D.Ariz.1980). In that case the court considered the power of a state court to compel the production of examination records prepared by the Federal Home Loan Bank Board. The Board claimed that 12 C.F.R. § 505.5(b) precluded the state court from ordering a bank to produce such records. That regulation is quite similar to § 510.5 which regulates Savings and Loan Associations, stating that all reports remained the property of the Board and prohibited any person from disclosing information contained therein. *See id.* at 925. The court stated:

> It is well recognized that reports of examinations of banks and savings and loan associations are not subject to disclosure to anyone who might want to see one and that such institutions can resist disclosure even though copies are in the hands of the banks or savings

and loan associations. *Denny v. Carey,* 78 F.R.D. 370 (E.D.Penn., 1978); *Overby v. United States Fidelity and Guarantee Co.,* [224 F.2d 158 (5th Cir.1955)]; *Bank of America National Trust and Savings Association v. Douglas,* 105 F.2d 100 (D.C.1939).

*Id.* at 927.

**17.** In its supplemental brief defendant alleges that plaintiffs have made a request to the OTS for production of these documents in accordance with the regulations. Defendant's counsel, Robert T. Grimit, submitted an affidavit indicating that he has received correspondence from both plaintiffs' counsel H. Edward Hales, Jr. and the OTS indicating that requests for the documents have been initiated. Defendant suggests that the court therefore deny the motion to compel this category of documents as moot. I decline this suggestion. While plaintiffs may receive the documents through OTS, nothing has yet been presented to the court to indicate that plaintiffs have in fact received the documents they seek.

2. Defendant is given until May 27, 1993, to either produce the following documents, or indicate that such documents have previously been produced:

a. The documents pertaining to the servicing of the Crest loan and Wrap loan;

b. The following documents for which defendant claimed privileges: the enclosures contained in documents 37 and 42, and item 39 of document 76; and

c. Defendant's documents prepared by any state or federal regulatory agency, other than the Office of Thrift Supervision, regarding the examination of American Charter.