WEST KEYNUMBERSYSTEM

**Dennis R. McFADDEN, et al., Plaintiff,**
v.
**NORTON COMPANY, Defendant.**

No. CV86-L-705.

United States District Court,
D. Nebraska.

Jan. 7, 1988.
On Reconsideration March 3, 1988.

Knapp, Mues, Beavers & Luther, Graten D. Beavers, Kearney, Neb. and Bruce L. Hart, Cozad, Neb., for Dennis R. McFadden.

Kenneth H. Elson, Grand Island, Neb., Cassem, Tierney, Adams, Gotch & Douglas, Charles F. Gotch, Omaha, Neb., for Paulsen Bldg. & Supply, Inc.

## MEMORANDUM AND ORDER

DAVID L. PIESTER, United States Magistrate.

In my memorandum and order of December 9, 1987, I reserved ruling on the plaintiff's motion to compel, filing 47, insofar as it concerns requests for production nos. 15 and 21, pending an *in camera* review of the Robert Dew report. That report has now been submitted and I have had an opportunity to examine it, so the matter is ripe for decision.

Request 15 seeks "any and all records showing any inspections actually conducted on the grinding wheel which is the subject of this action." Request 21 seeks "results and reports of any tests and/or inspections performed by the defendant, or on the defendant's behalf, on the machine upon which the grinding wheel was placed at the time of the accident alleged in the complaint." The defendant initially objected on grounds of attorney-client privilege and work product, as well as, in respect to request 21, on the ground that it sought information discoverable only in accordance with Rule 26(b)(4), *Fed.R.Civ.P.* Later, supplemental responses were made, and correspondence between counsel established that the records of inspections made at the time of manufacture of the wheel had been destroyed, and that an inspection

had been made of the wheel and machine involved in this accident in 1983 by a Robert Dew. It is this report which is at issue in this dispute.

There is no factual basis upon which to conclude that the information in the report is that of an expert witness so as to make applicable the provisions of Rule 26(b)(4). This objection is overruled.

The defendant correctly argues that the applicable provisions of privilege in a diversity case are those of state law. In this case, that means Neb.Rev.Stat. Section 27–503, pertaining to attorney-client privilege. That statute grants a privilege to a client to refuse to disclose "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client...." This statute further states that a communication is confidential "if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Such communications between a client or a client's representative and the lawyer are privileged.

The burden of proof in discovery matters where a privilege is asserted is on the one asserting the privilege. *FTC v. Shaffner*, 626 F.2d 32, 37 (7th Cir.1980); *Heathman v. United States District Court*, 503 F.2d 1032, 1033 (9th Cir.1974); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (W.D.Pa.1979); *Pleasant Hill Bank v. United States*, 58 F.R.D. 97, 101 (W.D.Mo. 1973). In this case the affidavit of W. Henry Jackson, house counsel for the defendant, is offered in support of the defendant's claim of attorney-client privilege, as well as the work product immunity.

The affidavit states that after Norton Company had been advised that the insurer which had paid workmen's compensation benefits to Dennis McFadden as a result of the accident out of which this case arises would be seeking reimbursement from Norton, an investigation was undertaken by Robert Dew, area marketing manager for Norton. A copy of his report was given to Mr. Jackson, and was also subsequently made available to defense counsel in this case. It further states that it is the policy of the defendant's legal department and Mr. Jackson as in-house counsel to investigate and prepare a written report "for the use by in-house counsel and Norton, concerning any abrasive blade breakage resulting in personal injury and which involves the likelihood of potential litigation against Norton Company." The affidavit further states that "Mr. Dew was directed to conduct the investigation and prepare his report on the accident involved in this action for the purpose of obtaining facts and information which attorneys for Norton needed in order to provide legal advice, opinions and services to Norton."

My examination of the affidavit and the report leaves great doubt as to whether the report is privileged under the attorney-client privilege. First, there is a problem with dates. The Jackson affidavit states that he has been employed as counsel for Norton Company "since 1983." The letter received from General Casualty Company seeking reimbursement from Norton for workmen's compensation benefits was dated September 7, 1983. Mr. Dew's inspection was performed September 29, 1983, and the report bears that date. The interoffice memorandum which transmitted a copy of the report to Mr. Jackson is dated December 6, 1983 and bears a stamp indicating it was received in the office of Mr. Jackson on December 9, 1983. The Jackson affidavit does not say at whose request Mr. Dew was directed to investigate the accident. The information provided does not establish that Mr. Jackson was house counsel at the time of the accident, at the time the letter was received from General Casualty Company, or at the time the report was requested or completed. In addition, there is no explanation for the time lapse between the completion of the report and its transmittal to counsel, the length of which seems to indicate that its purpose was other than for the "rendition of professional legal services."

Second, there is a problem with personnel designated on the interoffice memoran-

dum transmitting the report to counsel. The memorandum is from "L.W. Latvala" and bears handwritten initials beside that name. It shows that copies were given to "W.H. Siegmund" and "R.Dew." It is not known who L.W. Latvala and W.H. Siegmund are. There is no showing that they are attorneys. If they both were employed by the defendant company at the time and were not attorneys, the inference arises that the report was not prepared for "facilitating the rendition of professional legal services," since the report was apparently first given to non-attorney staff and later forwarded to counsel.

Third, there is no factual support in the affidavit, nor in the report or its transmittal memorandum, for a conclusion either that the report was intended to be confidential, or that it was prepared to facilitate the rendition of professional services. In addition to the foregoing factors, the transmittal memorandum to Mr. Jackson from L.W. Latvala does not disclose such a purpose. It begins, "For your information...." it does not seek the answer to any question concerning any aspects of the law concerning the incident, and does not call the recipient's attention to any legal issues.

For the above reasons, I conclude that the defendant has failed to demonstrate that the attorney-client privilege applies.

■ The matter of work product immunity is a far more difficult matter to resolve. Under the provisions of Rule 26(b)(3), in order to prevent discovery of the Dew report, defendant must demonstrate that it was "prepared in anticipation of litigation or for trial." The Jackson affidavit is of little assistance. As noted, it recites that the defendant received a letter dated September 7, 1983 informing defendant that General Casualty Company would be seeking reimbursement from Norton for the workmen's compensation benefits paid to Dennis McFadden. The letter, a copy of which is attached to the affidavit, does not advise Norton that litigation has commenced, nor does it mention litigation in any respect. It is from an insurance adjuster, not an attorney,[1] and is addressed to "Norton Construction Products Division," not counsel. It seeks a reply, but does not threaten litigation if one is not received. The Jackson affidavit states, "As a result of the letter attached as Exhibit 'D–2', it was anticipated that litigation would be instituted against Norton Company with respect to this accident. In accordance with standard company policy and operating procedure, Robert Dew, Area Marketing Manager for Norton Company, was directed to investigate the alleged accident." The affidavit does not state who anticipated that litigation would be instituted, nor on what, if any, basis other than the letter such anticipation was founded. Nor, as noted, does the affidavit state who directed Mr. Dew to perform the investigation. The affidavit states that it is the present policy of the defendant's legal department and Mr. Jackson to investigate personal injury accidents which involve "the likelihood of potential litigation" against the defendant, but the "standard company policy and operating procedure" in existence in 1983 is not described. There is no indication as to whom the letter received from General Casualty Company's adjuster was routed within the defendant company, nor whether it was answered, and if so, by whom. There is no statement as to whether the defendant company, or its insurer, routinely refused to negotiate payment of all claims such as that described in the adjuster's letter, thus forcing any claimant into litigation, or whether, on the other hand, a significant percentage of such claims were at that time resolved without litigation. To be sure, whenever a product manufacturer receives notice that an injury has occurred involving one of its products and reimbursement of worker compensation benefits will be sought against it, a potential for litigation arises. The question is whether, in the absence of any other showing, such notice is sufficient to become the "anticipation of litigation" described in Rule 26(b)(3). I conclude that it is not.

---

1. There is no indication when plaintiff retained counsel in this matter, but I infer that counsel had not been retained as of the date of the letter.

The discussion above pertaining to the attorney-client privilege and the questions remaining unresolved with respect to that matter apply to the work product immunity, as well. The inference arises that the report was prepared in the ordinary course of business pursuant to a policy requiring such reports any time the company was informed of a personal injury involving one of its products. Later giving a copy of the report to counsel does not shield it from discovery, if it was not initially prepared in anticipation of litigation. In addition, an inference arises that the report was not prepared at counsel's request, in that the form used for the report is essentially identical to a similar report submitted to the court *in camera* dated August 6, 1976, before present counsel was employed by the company.[2]

Defendant argues that the decision in *Almaguer v. Chicago Rock Island Railroad Company*, 55 F.R.D. 147 (D.Neb. 1972) supports a conclusion that the Dew report was prepared in anticipation of litigation. In that case, Judge Urbom concluded:

> The anticipation of filing a claim against a railroad, when a railroad employee has been injured or claims to have been injured on the job, is undeniable, and the expectation of litigation in such circumstances is a reasonable assumption.

55 F.R.D. at 149. That conclusion was based upon an analysis of the factual situations in several cases, and was described by Judge Urbom as a "slender showing." *Id.* at 148. The reasoning of *Almaguer*, however, has not been applied in contexts other than cases under the Federal Employers Liability Act, and even the "reasonable assumption" of litigation discussed in *Almaguer* could be rebutted by a showing that the anticipation of litigation had not yet come into existence.

I suspect there are many similarities between cases brought pursuant to the FELA and cases involving personal injuries to employees and subsequent claims brought against manufacturers of products alleged to have been at fault. Those similarities, however, are not before me in the record as it now stands, and I cannot assume that they are such as to justify extending the holding of *Almaguer* to the situation of this case. I therefore decline the defendant's invitation to simply presume an anticipation of litigation based solely upon the notice from the insurance adjuster that reimbursement would be sought from the defendant for the workmen's compensation benefits paid to the plaintiff McFadden.

I conclude based on the foregoing that the defendant has not established the anticipation of litigation necessary to protect the Dew report from discovery under Rule 26(b)(3). Therefore, because the report is not trial preparation material, its contents are not "such materials" prepared in anticipation of litigation, so as to protect from discovery any mental impressions, conclusions, or opinions contained therein. *See, Abel Inv. Co. v. United States*, 53 F.R.D. 485 (D.Neb.1971); 8 Wright and Miller, Federal Practice and Procedure: Civil § 2026 (1987 pocket part).

The foregoing discussion applies in large measure to the report submitted to the court *in camera* in response to plaintiff's request for production no. 17. That report concerns an accident investigation report dated August 6, 1976. Although it is referred to in the Jackson affidavit, it predates Mr. Jackson's employment with the defendant, and there is some doubt as to whether his statements should be considered, in light of the requirements of Local Rule 20.[3] The 1976 report is not accompanied by a cover letter or transmittal memorandum, and so some of the comments above would not apply. There is, as a result, even less of a showing in support of the defendant's assertion that the report was prepared "in anticipation of litigation." I must, therefore, overrule this objection to its production.

---

**2.** See discussion below.

**3.** Local Rule 20(A)(2) requires that affidavits filed in support of or opposition to pending motions be made on personal knowledge, set forth facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify as to such matters.

In accordance with the foregoing,

IT THEREFORE HEREBY IS ORDERED:

1. The plaintiff's motion to compel, filing 47, as it pertains to requests for production nos. 15 and 21, is hereby granted, and the defendant shall within 14 days, produce to plaintiff's counsel the Robert Dew report dated September 29, 1983.

2. The defendant's objection, on the basis of attorney-client privilege and work product immunity, to the production of the accident investigation dated August 6, 1976 regarding the injury of Anthony Crosslin, are hereby overruled and such report shall be produced within 14 days, in response to plaintiff's request for production 17.

3. Each party shall bear its own expenses with regard to this discovery matter.

## MEMORANDUM AND ORDER ON RECONSIDERATION

The defendant has requested reconsideration of the memorandum and order of January 8, 1988. In support of the motion for reconsideration defendant has filed the affidavits of W. Henry Jackson (filing 79), Robert Dew (filing 80), and Warren H. Siegmund (filing 81). In addition defendant also relies upon the original affidavit of W. Henry Jackson filed in opposition to the original motion to compel.

It should be noted that none of the information contained in the affidavits in support of the motion to reconsider addresses paragraph 2 of the court's order. Therefore, that portion of the motion to reconsider will be denied. In addition, defendant does not apparently seek reconsideration of my previous conclusion that the attorney-client privilege does not apply.

■ At issue, then, is whether a particular accident report prepared by the defendant's Area Marketing Manager, is covered by the "work-product rule" embodied in Rule 26(b)(3), *Fed.R.Civ.P.*, so as to be protected from discovery by the plaintiffs. In my initial memorandum dealing with

this question I pointed out a lack of information contained in the affidavits in opposition to the motion to compel, and concluded that the defendant had not demonstrated that the report in question was prepared "in anticipation of litigation." In support of the motion to reconsider, the defendant has provided additional information through the new affidavits. The Jackson affidavit establishes that he was the corporate counsel for the defendant at the time the letter was received from GAB Business Services, Inc. notifying the defendant of the subrogation claim for workmen's compensation benefits paid to the plaintiff as a result of the accident at issue in this case. Jackson states in his affidavit that as a result of the letter he "perceived and understood" it to be a threat of litigation. He also states that it is his experience both prior to and at the Norton Company that once notice of personal injury is made to a manufacturer it "almost always" results in litigation. He also states, "in my experience at Norton and prior thereto, I have received notices of accident and claims from workers' compensation carriers which later resulted in a lawsuit against the Company." After receiving the letter, Jackson requested L.W. Latvala, another Norton Company employee,[1] to have an accident investigation conducted and a report prepared. According to the Siegmund and Dew affidavits, Latvala requested Siegmund, the Regional Director of Marketing, to have the investigation conducted, and Siegmund, in turn, requested Robert Dew, the Area Marketing Manager, to conduct the investigation and prepare a report. Dew did that on September 29, 1983. The report was sent back to Siegmund, who in turn, transmitted it to Latvala, who in turn, gave it to Jackson. Neither Dew nor Siegmund retained a copy of the report, although they did receive copies of the interoffice memorandum transmitting it to Mr. Jackson. The Jackson affidavit states that copies of the report have been provided to Norton's insurance carrier, Norton's product safety engineer, Norton's trial attor-

---

1. Mr. Latvala's position with the defendant is not disclosed by any affidavit; the Siegmund affidavit states he is no longer employed by defendant.

neys defending other litigation against Norton, and the trial attorneys defending Norton in this action.

The Jackson affidavit continues by stating that the reason he requested the investigation report to be prepared was, "so I could evaluate the notice of claim and demand letter of September 7, 1983 ... and so I could obtain facts and information which I needed in order to provide legal advice, opinions and services to Norton Company and respond to and defend the litigation which I anticipated would arise from this accident. There was no other purpose for obtaining the accident report." In addition, Jackson states that the "standard company policy and operating procedure" at Norton Company both before his employment there and continuing to date, has been "to investigate and prepare personal injury accident reports, on all accidents, of which Norton has notice which involve the likelihood of potential litigation against Norton. In each and every case, such accident reports are forwarded to me for my use in defending Norton Company."

The additional information provided by the three new affidavits does much to fill in the gaps left from the first affidavit in response to the original motion. However, even with the additional information provided, I am unable to conclude that the defendant has met its burden of demonstrating that the investigation report was prepared "in anticipation of litigation."

The first problem is the lack of a basis for the "anticipation of litigation." I said in my initial memorandum that there was no demonstrated basis for that conclusion, and in response the Jackson affidavit does address the point. It does state that in Jackson's experience receipt of notice and demand regarding a personal injury "almost always" resulted in litigation, but then states that such notices resulted in "a lawsuit." The affidavit does not state facts as to how many such notices have been received nor how many have been resolved without litigation. I cannot accept the "almost always" conclusion without facts. Similarly, the affidavit's conclusion that "it is extremely doubtful if not impos-

sible that a new, unused and undamaged wheel would disintegrate," is without foundation and not shown to be competent. Similarly, the conclusion, made apparently prior to the investigation being ordered, that "we do not pay groundless claims," must be disregarded for similar reasons. This leaves the "a lawsuit" language, which of course, is insufficient to establish any probability of litigation of the present claim. Even if it had been shown that a majority of claims submitted to the defendant resulted in litigation, there is no factual basis set forth in the affidavit for Jackson's anticipating that this particular claim would be one which would have to be litigated, as opposed to negotiated.

One court, in evaluating an insurance company's investigation of a claim, stated:

> In the early stages of claims investigation, management is primarily concerned not with the contingency of litigation, but with "deciding whether to resist the claim, to reimburse the insured and seek subrogation of the insured's claim against the third party, or to reimburse the insured and forget about the claim thereafter." *Thomas Organ Co. v. Jadranska Slobodna Plovidba,* [54 F.R.D. 367, 373 (N.D.Ill.1972) ]. At some point, however, an insurance company's activity shifts from mere claims evaluation to a strong anticipation of litigation. *See Westhemeco Ltd. v. New Hampshire Ins., Co.,* [82 F.R.D. 702, 708 (S.D.N.Y. 1979) ]. This is the point where the probability of litigating the claim is substantial and imminent. *See APL Corp. v. Aetna Cas. & Sur. Co.,* 91 F.R.D. 10, 21 (D.Md.1980); *Miles v. Bell Helicopter Co.,* [385 F.Supp. 1029, 1033 (N.D.Ga. 1974) ]. The point is not fixed, it varies depending on the nature of the claim, and the type of investigation conducted. *See Westhemeco Ltd. v. New Hampshire Ins., Co., supra,* 82 F.R.D. at 708. The decision whether insurance company investigatory documents were "prepared in anticipation of litigation" turns, therefore, on the facts of each case.

*Carver v. Allstate Insurance Co.,* 94 F.R. D. 131, 134 (S.D.Ga.1982). The fact that an accident investigation was directed to be

conducted and a report prepared, does not in and of itself demonstrate that the defendant had then decided whether to resist the claim, pay it, or take some other action. In fact, it demonstrates that the defendant was yet in the process of deciding.

Second, although it is not overwhelming evidence one way or the other, the fact that the investigation was prepared by a person in the defendant's marketing division raises questions as to whether litigation was being anticipated at that time. There is no explanation of Mr. Dew's background in accident investigation, if any, nor any statement as to whether he was apprised of any legal issues involved, nor any particular factual determinations which were important to be made in order to preserve the defendant's trial position.

Third, the statements made as to the reasons for requesting the report, that is, to provide legal advice, opinions and services to Norton Company, go as much to the process of deciding whether to anticipate litigation as to defending litigation. The later statement of reasons for requesting the report, to "respond to and defend the litigation which I anticipated would arise from the accident," do not provide the basis for the conclusion that litigation was reasonably anticipated.[2] The fact that these reports have been routinely prepared any time the defendant is notified of a personal injury claim which has any "likelihood of potential litigation," does not establish that this particular report was prepared in anticipation of litigation, but rather begs the question of setting forth the basis for believing that a "likelihood" of litigation existed.

The Eighth Circuit Court of Appeals has adopted the standard set forth by Professors Wright and Miller:

> Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can

fairly be said to have been prepared or obtained *because of the prospect of litigation.* But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

8 C. Wright and A. Miller, Federal Practice and Procedure, Section 2024 at 198–199 (1970) (footnotes omitted) (emphasis added); *see Simon v. G.D. Searle and Co.,* 816 F.2d 397, 400–402 (8th Cir.1987); *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir.1977), *on reh'g* 572 F.2d 606 (8th Cir.1978) (en banc).

The affidavits do not support a conclusion that the report in question was prepared in anticipation of litigation. Rather, they support the conclusion that the report was prepared in order to determine whether to anticipate litigation. This was in keeping with the defendant's prudent business policies of evaluating claims in-house, prior to determining its response to the letter notifying it of the subrogation claim. For these reasons I must deny the motion to reconsider.

IT THEREFORE HEREBY IS ORDERED, the defendant's motion for reconsideration, filing 93, is denied.

---

**2.** Mr. Jackson has not filed an appearance in this case, so it is not known what was intended by his use of the word "defend."