Tina BRENNAN, Plaintiff,

v.

WESTERN NATIONAL MUTUAL
INSURANCE COMPANY,
Defendant.

No. Civ. 99–4092.

United States District Court,
D. South Dakota,
Southern Division.

March 9, 2001.

Mike C. Fink, Bjorkman Law Office, Bridgewater, SD, for plaintiff.

Gordon Verne Goodsell, Mark J. Connot, Gunderson, Palmer, Goodsell & Nelson, Rapid City, SD, for defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Plaintiff, Tina Brennan, has filed a Motion to Compel Defendant, Western National Mutual Insurance Company (Western National), to disclose certain pages of Defendant's claims file. Brennan also requests an expedited ruling on her Motion to Compel. For the reasons stated below, the Motion to Compel is granted in part and denied in part.

## BACKGROUND

As is set forth in the Court's previous Memorandum Opinions and Orders, this case involves Brennan's allegations that Defendant Western National denied her workers compensation insurance benefits in bad faith. Judging from letters written to Western National by one of Brennan's attorneys, Brennan raised the possibility of a bad-faith claim in February of 1997, more than two years before the commencement of this lawsuit.

Early on in this litigation, Brennan sought information contained in Western National's claims file. Western National eventually produced the claims file, but excluded several documents which, according to both Brennan and Western National, relate to Western National's potential liability for bad faith. According to Western National, each of these documents is privileged, because each relates to communications between Gay Buccholz, an employee of Western National, and Western National's attorneys, G. Verne Goodsell and the law firm of Gunderson, Palmer, Goodsell & Nelson. These documents are:

(1) A note dated July 29, 1997, hand-written by Buccholz regarding seeking a legal opinion from Goodsell. (WNI 652.)

(2) A letter dated July 31, 1997, from Buccholz to Goodsell regarding a legal opinion. (WNI 569.)

(3) A letter dated August 19, 1997 from Goodsell to Buccholz regarding a legal opinion. (WNI 570–583.)

(4) A letter dated September 3, 1997 from Goodsell to Buchholz. (WNI 584–591.)

(5) An itemized bill for legal services dated October 9, 1997 from Gunderson, Palmer, Goodsell & Nelson to Buccholz. (WNI 806–807.)

Each of these documents was generated after February of 1997, when Brennan, by demanding $50,000 to settle a bad-faith claim, first raised the probability of a lawsuit alleging bad-faith denial of insurance benefits by Western National. Western National claims that the items are all protected by the attorney-client and work-product privileges.

## DISCUSSION

█ In a diversity case, such as this, questions of attorney-client privilege are resolved according to state law. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir.2000). Since work-product protection is, for present purposes, a creature of Rule 26(b)(3) of the Federal Rules of Civil Procedure, questions of work-product privilege are resolved according the federal law. *See id.*

Under South Dakota law, attorney-client privilege protects confidential communications between a client and its attorney, if the communications were made for the purpose of facilitating the rendition of professional legal services on behalf of the client. SDCL 19–13–3; *see also State v. Catch the Bear*, 352 N.W.2d 640 (S.D.1984).[1] All but two of the five items fit this definition. The handwritten note which Gay Buccholz apparently made to herself on July 29, 1997 (WNI 652) is not a communication between a client and its attorney, and is therefore not protected by the attorney-client privilege. In addition, as explained below, the legal billing statement (WNI 806–807) is only partially protected by the privilege.

█ In a legal bill, "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege." *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129. On the other hand, billing statements "which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services performed, such as researching particular areas of the law, fall within the privilege." *Id.* Western National has submitted the its bill from Gunderson, Palmer, Goodsell & Nelson for an *in camera* review under this standard.

█ With the exception of one itemized statement on its second page, the bill is not protected by the attorney-client privilege.

The information in the bill does little more than show client identity, fee amounts, an account number, and the general purpose of the work performed. *See id.* Even the itemized statements relating to research of a possible bad-faith claim do not reveal any secrets about Western National's litigation strategy. The first itemized statement for August 13, 1997 (the one just before "conference with Attorney Gebhart"), however, tends to reveal Western National's litigation strategy, and may be redacted by Western National before the billing statement is produced.

█ The Court has also examined WNI 652 *in camera*. The handwritten note of July 29, 1997 does not fall within the attorney-client privilege, as it deals with the bad-faith claim and requesting an opinion from counsel on the bad-faith claim. It does, however, qualify for work-product protection. The Federal Rules of Civil Procedure restrict the discovery of "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party." Fed.R.Civ.P. 26(b)(3). Because Brennan had made bad faith an issue in February of 1997, Buccholz's handwritten note can fairly be said to have been prepared by Western National in anticipation of litigation. To obtain disclosure of the July 29, 1997 note, Brennan must show that she has a substantial need of the note in the preparation of her case and that she cannot without undue hardship obtain the substantial equivalent of the note by other means. Fed.R.Civ.P. 26(b)(3). Brennan has not made such a showing, and the note itself is exempt from discovery.[2]

█ WNI 652 also contains a second handwritten note in the same handwriting as the July 29, 1997 entry. The August 20, 1997 note is covered by the attorney-client privilege, as it states the telephone advice given by attorney Verne Goodsell. If advice of counsel given by attorney Goodsell was being relied upon in this litigation by the insurer,

---

1. South Dakota's version of the attorney-client privilege also protects several other types of confidential communication which are not relevant here. *See* SDCL 19–13–3.

2. Brennan may be able to obtain the substantial equivalent of the note during her depositions of Western National's employees. *See* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure, Civil 2d*, § 2025 at 375.

then there could be a waiver of the attorney-client privilege, as well as the work-product privilege. *See Kaarup v. St. Paul Fire & Marine Ins. Co.,* 436 N.W.2d 17, 21 (S.D. 1989). Defense counsel, however, indicated in their letter to the Court of March 8, 2001 that advice of counsel Goodsell was not being relied upon by the defense.

The Court does not accept Brennan's argument that the nature of this bad-faith litigation, in and of itself, creates an exception to the attorney-client or work-product privileges. A litigant's assertion that he acted in good faith does not, by itself, waive these privileges. *See Dixie Mill Supply Co. v. Continental Casualty Co.,* 168 F.R.D. 554 (E.D.La.1996). Accordingly,

IT IS ORDERED:

1. That the Motion to Compel is denied, except to the extent that it seeks the production of Western National's legal bill (WNI 806–807).

2. That, prior to producing the legal bill (WNI 806–807), Western National may redact the first itemized statement for August 13, 1997.