**S.D. WARREN COMPANY, Plaintiff**

v.

**EASTERN ELECTRIC CORPORATION, Defendant**

**No. CIV. 01–31–B–K.**

United States District Court,
D. Maine.

July 17, 2001.

John F. Lambert, Jr., Thomas V. Laprade, Lambert, Coffin, Rudman & Hochman, Portland, ME, for S D Warren Company dba Sappi Fine Paper North America, plaintiffs.

Laurence H. Leavitt, Friedman, Babcock & Gaythwaite, James M. Bowie, Thompson & Bowie, Portland, ME, for Eastern Electrical Corp, Acadia Insurance Company, defendants.

## MEMORANDUM OF DECISION [1]

KRAVCHUK, United States Magistrate Judge.

On June 29, 2001, the parties brought to my attention a discovery dispute relating to whether certain documents are properly being withheld by Eastern Electric Corporation and/or its insurer, Acadia Insurance Company, as privileged work product. Based on the parties' presentation of the problem, I ordered that they submit briefs so that I could consider the matter in greater depth. They have complied with that order and I have reviewed their submissions and the authorities cited therein. I now conclude that the work product privilege does not attach to the documents and communications at issue and that Eastern must produce all of the documents identified in the parties' submissions insofar as they are relevant to the parties' claims or defenses.

## BACKGROUND

This case concerns an accident that occurred on May 12, 1999 at the S.D. Warren Company paper mill in Skowhegan, Maine when Eastern was performing electrical work on site. S.D. Warren alleges that Eastern's negligence caused a power outage that shut down three paper machines in the mill. At the time, Acadia Insurance Company insured Eastern, allegedly for the sort of risk involved in this case. Within the next month, S.D. Warren put Acadia on notice of its claim. From this date until the filing of this suit in February 2001, Acadia engaged an independent engineer and accounting firm to assist its adjusters with the investigation of the claim. According to the complaint, S.D. Warren sent Acadia a notice of prejudgment interest and a demand for payment on October 24, 2000. As of the filing of this suit, Acadia had not denied S.D. Warren's claim.

The parties' dispute concerns the following documents and communications: a document prepared by an Acadia claims adjuster that, according to Eastern, contains the adjuster's thoughts about coverage, reserves, liability and further investigation;[2] a statement Acadia obtained from an Eastern employee; and communications (a letter and an email) between Acadia and its consultants. According to Eastern, these consultants were hired "because of the complexity of the electrical issues involved and the extent of the damages being claimed." Eastern's counsel has not submitted these materials for my *in camera* review.

## DISCUSSION

■ Pursuant to Rule 501 of the Federal Rules of Evidence, "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law sup-

---

1. Pursuant to Fed.R.Civ.P. 73(b), the parties have consented to allow the United States Magistrate Judge to conduct any and all proceedings in this matter.

2. This document may not be discoverable for reasons unrelated to the work product privilege claimed in the case, i.e., it may not be discoverable under Rule 26(b)(1) as relevant to a claim or defense. If the defendant wishes to interpose this objection, the document can be submitted for *in camera* review.

plies the rule of decision, the privilege of a witness, person, government, [s]tate, or political subdivision thereof shall be determined in accordance with [s]tate law." Generally what this means is that, in diversity cases where no federal question is presented, such as the instant case, state law will govern the application of a privilege. *Green v. Fulton,* 157 F.R.D. 136, 139 (D.Me.1994). However, federal courts apply federal law when addressing the work product doctrine, even in diversity cases lacking any federal question. *See, e.g., Baker v. GMC,* 209 F.3d 1051, 1053 (8th Cir.2000); *Frontier Ref., Inc. v. Gorman–Rupp Co.,* 136 F.3d 695 (10th Cir.1998); *United Coal Cos. v. Powell Constr. Co.,* 839 F.2d 958, 966 (3d Cir.1988).[3] Pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Pursuant to the rule, it "is not necessary that a document be prepared by an attorney in order for the immunity to apply." *Scott Paper Co. v. Ceilcote Co.,* 103 F.R.D. 591, 594 (D.Me.1984). The operative issue is whether the discovery sought was "prepared in anticipation of litigation or for trial." *Id.* (quoting Fed.R.Civ.P. 26(b)(3)). The proponent of the privilege bears the burden on this issue. *Sandberg v. Virginia Bankshares,* 979 F.2d 332, 355 (4th Cir.1992); *City of Springfield v. Rexnord Corp.,* 196 F.R.D. 7, 10 (D.Mass. 2000). The generally applicable standard is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Simon v. G.D. Searle & Co.,* 816 F.2d 397, 401 (8th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987).

Eastern argues that it "strains credulity and ignores modern business realities to suggest that Acadia was not anticipating litigation when it was investigating [S.D. Warren's] million dollar plus demand." Eastern insists that all documents and communications made by an insurance company[4] in the course of adjusting an insurance claim must be considered to be made in anticipation of litigation because it is in the nature of the insurance business to always operate under the cloud of threatened litigation. Other than relying on this rationale, Eastern offers little in the way of facts to carry its burden. S.D. Warren counters that the appropriate presumption is that these documents were prepared for purposes of adjusting the claim, not for litigation purposes and, therefore, the work product privilege does not apply.

The conventional wisdom is that courts have taken three approaches to the issue of whether materials obtained by an insurance company in the routine course of adjusting claims are work product. One line of cases holds that all investigative materials compiled by non-lawyers are presumptively nonwork product unless they are created or obtained at the behest of an attorney in antici-

---

3. Those courts that discuss the distinction essentially indicate that because Rule 26(b)(3) expressly addresses the work product privilege and codifies federal common law, it applies rather than Rule 501 of the Federal Rules of Evidence. *See United Coal,* 839 F.2d at 966; *Abbott Labs. v. Alpha Therapeutic Corp.,* 200 F.R.D. 401, 405 (N.D.Ill.2001); *Brennan v. W. Nat'l Mut. Ins. Co.,* 199 F.R.D. 660, 662 (D.S.D.2001).

4. "Counsel for an insurer may invoke work product protection in favor of documents prepared by it in anticipation of litigation even though the insurer is not a named party in an action." *United Coal,* 839 F.2d at 966.

pation of litigation. The case most cited for this line of thought is *Thomas Organ Co. v. Jadranska Slobodna Plovidba*, 54 F.R.D. 367 (N.D.Ill.1972). Because this approach. holds that investigative materials compiled by a party and its agents can only be work product if the individuals conducting the investigation are serving as agents for an attorney, the practical consequence in the insurance context is that most materials compiled by an adjuster and his or her agents during claims investigation are denied work product protection. *Thomas Organ*, 54 F.R.D. at 372. This approach has been generally rejected because of its restriction on the literal language of Rule 26(b)(3), which permits documents and communications to be work product even though an attorney is not involved in any way in their creation. Rather, courts have preferred to interpret Rule 26(b)(3) literally, giving work product protection to all materials actually compiled in anticipation of litigation, not just to those created by or for attorneys. *See* 6 James Wm. Moore, Moore's Federal Practice § 26.70[3][c], at 26–216 (3d Ed.2000). Thus, courts have generally agreed that whether the work product privilege applies depends on a fact specific inquiry into whether a given item of discovery was produced in anticipation of litigation. *Id.* at 26–217. This broad consensus breaks down, however, in cases narrowly involving disputes over the discoverability of items contained in an insurance claims adjuster's files.

A minority of federal courts have held that all materials located in an insurance claims adjuster's files must be deemed to have been collected or created in anticipation of litigation because it is in the nature of the insurance business to always be preparing for litigation. *See, e.g., Fontaine v. Sunflower Beef Carrier, Inc.*, 87 F.R.D. 89, 92 (E.D.Mo. 1980); *Almaguer v. Chicago, R.I. & P.R. Co.*, 55 F.R.D. 147, 149 (D.Neb.1972).[5] The overwhelming majority of federal courts that have addressed the issue have chosen not to accord insurance companies special treatment during discovery and have maintained the fact specific approach in this context.[6]

My conclusion is that the far sounder approach is the one followed by the majority of federal courts. Because the issue is one of first impression in this District, it is necessary to discuss the differing rationales to some extent. The minority federal position happens to be followed by the Maine Supreme Judicial Court. *See Harriman v. Maddocks*, 518 A.2d 1027 (Me.1986). Because *Harriman* provides as good a foil as any of the minority federal cases, and because counsel in this District are most familiar with it, I will confine my critique of the "insurance adjuster's work product privilege" to it.

In *Harriman*, the Law Court held that insurance companies must be understood as essentially being in the business of litigation. *Id.* at 1034 (holding that "the routine business of claims investigation by an insurance

5. Although it is often cited as authority for this proposition, *Almaguer* is actually a "railroad accident" case litigated under the Federal Employers Liability Act, not an "insurance" case, and thus not narrowly on point. Moreover, the *Almaguer* court spoke of a "reasonable assumption" rather than a conclusive presumption that accident investigations occur in anticipation of litigation. *Almaguer*, 55 F.R.D. at 149. In fact, the District of Nebraska has declined to extend *Almaguer* to the insurance context. *See McFadden v. Norton Co.*, 118 F.R.D. 625, 629 (D.Neb. 1988).

6. *See, e.g., Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir.1996); *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 632 (N.D.Iowa 2000); *Lyvan v. Harleysville Ins. Co.*, 1994 WL 533907, *2–3, 1994 U.S. Dist. LEXIS 13981, *7–8 (E.D.Pa.1994); *Henderson v. Zurn Indus.*, 131 F.R.D. 560, 571 (S.D.Ind.1990); *Schmidt v. California State Auto. Assoc.*, 127 F.R.D. 182, 184 (D.Nev.1989); *Airheart v. Chicago & North Western Transp. Co.*, 128 F.R.D. 669, 671 (D.S.D.1989); *Pasteris v. Robillard*, 121 F.R.D. 18, 20 (D.Mass.1988); *Rinaldi's Fast Foods, Inc. v. Great American Ins. Cos.*, 123 F.R.D. 198, 202 (M.D.N.C.1988); *McFadden*, 118 F.R.D. at 629 (D.Neb.1988); *Mission Nat. Ins. Co. v. Lilly*, 112 F.R.D. 160, 164 (D.Minn.1986); *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 164 (D.Minn.1986); *State Farm Fire & Cas. Co. v. Perrigan*, 102 F.R.D. 235, 238 (W.D.Va.1984); *Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 134 (S.D.Ga.1982); *Fine v. Bellefonte Underwriters Ins. Co.*, 91 F.R.D. 420, 422 (S.D.N.Y.1981); *APL Corp. v. Aetna Cas. & Sur. Co.*, 91 F.R.D. 10, 18 (D.Md.1980); *Spaulding v. Denton*, 68 F.R.D. 342, 344–46 (D.Del.1975); *Miles v. Bell Helicopter Co.*, 385 F.Supp. .1029 (N.D.Ga.1974) *Atlanta Coca–Cola Bottling Co. v. Transamerica Insurance Co.*, 61 F.R.D. 115 (N.D.Ga.1972).

company is to prepare for possible litigation").[7] The Law Court began by identifying that Rule 26 of the Maine Rules of Civil Procedure was amended to follow the federal rule and that it is, in all regards, identical to the federal rule. *Id.* at 1033 n. 8. The Law Court identified the three approaches followed by the federal courts and declared that, at the time, there was no clear majority approach. *Id.* at 1032 & n. 9. In rejecting the case-by-case approach, the Law Court complained that it "will often involve the motion justice in a complex and time-consuming procedure that will require extensive factfinding." *Id.* at 1033. It then stated that courts adhering to this approach "ignore[ ] the inescapable fact that the ordinary business of an insurance adjuster is not only to determine whether to pay its insured, but also to prepare for litigation." *Id.* (internal quotation marks and citation omitted). In conclusion, the Law Court determined that the burden was better placed on the party seeking discovery to meet Rule 26(b)(3)'s substantial need and undue hardship tests.

Essentially, the Law Court's analysis is that because insurance companies both investigate and litigate claims, they must be considered as always doing the former in light of the latter. This logic is flawed. It does not necessarily follow that because insurance claims sometimes require litigation, all claim related documents prepared by an insurance company and its agents are also prepared in anticipation of litigation. This argument ignores the fact that one of the primary benefits of insurance is that losses can be covered so that litigation can be avoided. *See Airheart*, 128 F.R.D. at 671 ("[O]ne of the purposes of an early investigation is to establish contact with a potential claimant with a view toward keeping the case 'under control' and therefore avoid litigation."). Moreover, the presumption ignores the fact that insurance companies operating in Maine have an obligation to adjust claims in good faith. *Mar-*

*quis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 648 (Me.1993) (holding that an insurer owes a duty to act in good faith and deal fairly with its insured *as well as with third-party claimants*). *See also Rinaldi's Fast Foods*, 123 F.R.D. at 202 ("An insurance company cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insured.").

Most of the preliminary time and energy expended on adjusting a claim is geared toward settlement, not toward litigation. Indeed, that is clearly reflected by the facts of *Harriman*, in which a final settlement meeting was held eight days after an automobile accident and the insurance representative succeeded in making the plaintiff sign a release in exchange for a $7500 check on which was written, "Final settlement of any and all claims including bodily injury." *Id.* at 1028. Perhaps because the instant suit does not concern personal injuries, it even better reflects the weakness of the Law Court's declaration that insurance companies are in the business of litigation. Here the parties have a longstanding commercial relationship that creates a strong mutual incentive to settle their dispute rather than litigate. The facts suggest that meetings occurred as late as March 2000 between the parties' accountants in an effort to more accurately adjust the claim in the hopes of settlement. Moreover, it appears that the insurance policy actually references S.D. Warren as a beneficiary. It is perhaps in this context that it is best illustrated that insurance companies are primarily in the business of insuring risks, not conducting litigation.

■ I acknowledge the Law Court's concern that "[i]n our litigious society, ... there is an ever-present possibility of a claim's

7. In *Springfield Terminal Ry. Co. v. Dep't of Transp.*, 2000 ME 126, 754 A.2d 353, 357, the Law Court described its holding in *Harriman* as applying generically to parties whose business it is to prepare for litigation. *Id.*, ¶ 16, 754 A.2d at 358 n. 5. It is unclear whether that generic description was meant to serve as a euphemism for "insurance company" or whether the Law

Court, for the sake of expediency, would be willing to expand the rule to other types of parties that frequently appear before it, e.g., self-insured retailers that frequently investigate and defend slip-and-fall and other personal injury claims. As of this date, insurance companies are the sole benefactors of this per se approach in Maine.

ending in litigation," *Harriman,* 518 A.2d at 1034 (quoting *Fireman's Fund Ins. Co. v. McAlpine,* 120 R.I. 744, 391 A.2d 84, 89–90 (1978)), but this statement is as true of any legal right giving rise to a cause of action as it is of the rights and interests created by a policy of insurance. Granted, many suits are filed due to the existence of insurance funds that otherwise would not be, but it is also the case that some of the claims underlying such suits are valid and simply have no business ever appearing in court. That they do is not always to be laid at the door of the claimant. Although a court cannot and should not resolve the merits of an insurance claim at the discovery stage, certainly it is capable of assessing whether "the prospect of litigation was the primary reason or motivation for the preparation of the materials," *Ceilcote,* 103 F.R.D. at 594, just as it would be required to do with any other proponent of the privilege, including self-insured corporate defendants that are routinely in court defending personal injury actions and who are attempting to withhold reports compiled by their employees. In my view, the better rule is to hold that unless and until an insurance company can demonstrate that it reasonably considered a claim to be more likely than not headed for litigation, the natural inference is that the documents in its claims file that predate this realization were prepared in the ordinary course of business, i.e., the business of providing insurance coverage to insureds. "This approach realistically recognizes that at some point an insurance company shifts its activity from the ordinary course of business to anticipation of litigation, and no hard and fast rule governs when this change occurs." *Perrigan,* 102 F.R.D. at 238.

█ Other than relying on the *Harriman* rule, Eastern proffers only two insignificant facts, unsupported by affidavit: that some of the documents were prepared as late as three months after the accident occurred and that S.D. Warren's claim was for 1.5 million dollars. Certainly, the timing of communications and documents and the size of a claim are relevant to the inquiry, *see Ceilcote,* 103 F.R.D. at 594, but Eastern's representations shed little light on whether the materials at issue were prepared in anticipation of litigation. Claims processing, particularly in a case such as this where the computation of damages is complex, often moves slowly. Moreover, the timing of a particular document or communication would be particularly significant only insofar as it predated or post-dated some identifiable precipitating event or statement indicating that a claim was more likely than not to be litigated. For example, in this case S.D. Warren's October 2000 saber-rattling about "prejudgment interest" might reasonably have been understood to amount to a threat of litigation. But Eastern does not even make reference to this allegation and all of these documents were apparently generated months prior to this statement. I am also unmoved by the high dollar value of S.D. Warren's claim. Standing alone, it is impossible to determine whether the 1.5 million dollar claim is wholly out of proportion to the type of damages sustained by S.D. Warren or even how it relates to the policy limits.

### CONCLUSION

Looking at the facts developed in this proceeding, Eastern has not met its threshold burden of showing that the documents were created in anticipation of litigation. Therefore, to the extent that they are relevant to a claim or defense within the meaning of Rule 26(b)(1), I conclude that Eastern must disclose them.

*So Ordered.*